## COSTELLO *v.* UNITED STATES.

No. 72.   Argued January 16–17, 1956.—Decided March 5, 1956.

*Osmond K. Fraenkel* and *Morris Shilensky* argued the cause for petitioner.   With them on the brief were *Joseph Leary Delaney* and *George Wolf*.

*Marvin E. Frankel* argued the cause for the United States.   With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Holland* and *Joseph M. Howard*.

MR. JUSTICE BLACK delivered the opinion of the Court.

We granted certiorari in this case to consider a single question: "May a defendant be required to stand trial and a conviction be sustained where only hearsay evidence was presented to the grand jury which indicted him?"   350 U. S. 819.

Petitioner, Frank Costello, was indicted for wilfully attempting to evade payment of income taxes due the

United States for the years 1947, 1948 and 1949.[1] The charge was that petitioner falsely and fraudulently reported less income than he and his wife actually received during the taxable years in question. Petitioner promptly filed a motion for inspection of the minutes of the grand jury and for a dismissal of the indictment. His motion was based on an affidavit stating that he was firmly convinced there could have been no legal or competent evidence before the grand jury which indicted him since he had reported all his income and paid all taxes due. The motion was denied. At the trial which followed the Government offered evidence designed to show increases in Costello's net worth in an attempt to prove that he had received more income during the years in question than he had reported.[2] To establish its case the Government called and examined 144 witnesses and introduced 368 exhibits. All of the testimony and documents related to business transactions and expenditures by petitioner and his wife. The prosecution concluded its case by calling three government agents. Their investigations had produced the evidence used against petitioner at the trial. They were allowed to summarize the vast amount of evidence already heard and to introduce computations showing, if correct, that petitioner and his wife had received far greater income than they had reported. We have held such summarizations admissible in a "net worth" case like this. *United States* v. *Johnson,* 319 U. S. 503.

---

[1] The indictment was based on § 145 (b) of the Internal Revenue Code of 1939. 53 Stat. 63. There was also a count in the indictment for the year 1946 but petitioner was found not guilty of this charge.

[2] For discussions of the "net worth method," see *Holland* v. *United States,* 348 U. S. 121; *Friedberg* v. *United States,* 348 U. S. 142; *Smith* v. *United States,* 348 U. S. 147; and *United States* v. *Calderon,* 348 U. S. 160.

Counsel for petitioner asked each government witness at the trial whether he had appeared before the grand jury which returned the indictment. This cross-examination developed the fact that the three investigating officers had been the only witnesses before the grand jury. After the Government concluded its case, petitioner again moved to dismiss the indictment on the ground that the only evidence before the grand jury was "hearsay," since the three officers had no firsthand knowledge of the transactions upon which their computations were based. Nevertheless the trial court again refused to dismiss the indictment, and petitioner was convicted. The Court of Appeals affirmed,[3] holding that the indictment was valid even though the sole evidence before the grand jury was hearsay.[4] Petitioner here urges: (1) that an indictment based solely on hearsay evidence violates that part of the Fifth Amendment providing that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." and (2) that if the Fifth Amendment does not invalidate an indictment based solely on hearsay we should now lay down such a rule for the guidance of federal courts. See *McNabb* v. *United States*, 318 U. S. 332, 340–341.

The Fifth Amendment provides that federal prosecutions for capital or otherwise infamous crimes must be

---

[3] 221 F. 2d 668. The Court of Appeals reversed petitioner's conviction on the 1947 count on grounds not material here.

[4] Varying views have been expressed concerning whether indictments may be challenged because based in whole or in part on incompetent evidence. See, *e. g., Chadwick* v. *United States,* 141 F. 225; *United States* v. *Violon,* 173 F. 501; *Nanfito* v. *United States,* 20 F. 2d 376, 378; *Brady* v. *United States,* 24 F. 2d 405; *Banks* v. *United States,* 204 F. 2d 666; *Zacher* v. *United States,* 227 F. 2d 219. See also cases collected in 62 Harv. L. Rev. 111; 38 Yale L. J. 680; 71 Cent. L. J. 9; Joyce, Indictments (2d ed., Blakemore, 1924), 166–168; Note, 24 A. L. R. 1432.

instituted by presentments or indictments of grand juries. But neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act. The grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders. There is every reason to believe that our constitutional grand jury was intended to operate substantially like its English progenitor. The basic purpose of the English grand jury was to provide a fair method for instituting criminal proceedings against persons believed to have committed crimes. Grand jurors were selected from the body of the people and their work was not hampered by rigid procedural or evidential rules. In fact, grand jurors could act on their own knowledge and were free to make their presentments or indictments on such information as they deemed satisfactory. Despite its broad power to institute criminal proceedings the grand jury grew in popular favor with the years. It acquired an independence in England free from control by the Crown or judges. Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice. And in this country as in England of old the grand jury has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor. As late as 1927 an English historian could say that English grand juries were still free to act on their own knowledge if they pleased to do so.[5] And in 1852 Mr. Justice Nelson on circuit could say "No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of

---

[5] 1 Holdsworth, History of English Law (1927), 323.

determining whether or not the finding was founded upon sufficient proof . . . ." *United States* v. *Reed,* 27 Fed. Cas. 727, 738.[6]

In *Holt* v. *United States,* 218 U. S. 245, this Court had to decide whether an indictment should be quashed because supported in part by incompetent evidence. Aside from the incompetent evidence "there was very little evidence against the accused." The Court refused to hold that such an indictment should be quashed, pointing out that "The abuses of criminal practice would be enhanced if indictments could be upset on such a ground." 218 U. S., at 248. The same thing is true where as here all the evidence before the grand jury was in the nature of "hearsay." If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury,[7] like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

Petitioner urges that this Court should exercise its power to supervise the administration of justice in fed-

[6] As to the development of the grand jury as an institution here and in England, see *Hale* v. *Henkel,* 201 U. S. 43, 59; *Blair* v. *United States,* 250 U. S. 273, 282; *McGrain* v. *Daugherty,* 273 U. S. 135, 157; *United States* v. *Johnson,* 319 U. S. 503; 4 Blackstone Commentaries 301 *et seq.;* 1 Pollock and Maitland, History of English Law (1895), 130; 1 Holdsworth, History of English Law (1927), 312–323; Morse, A Survey of the Grand Jury System, 10 Ore. L. Rev. 101, 217, 295.

[7] See, *e. g., Pierre* v. *Louisiana,* 306 U. S. 354.

eral courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. No persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.

*Affirmed.*

MR. JUSTICE CLARK and MR. JUSTICE HARLAN took no part in the consideration or decision of this case.

MR. JUSTICE BURTON, concurring.

I agree with the denial of the motion to quash the indictment. In my view, however, this case does not justify the breadth of the declarations made by the Court. I assume that this Court would not preclude an examination of grand-jury action to ascertain the existence of bias or prejudice in an indictment. Likewise, it seems to me that if it is shown that the grand jury had before it no substantial or rationally persuasive evidence upon which to base its indictment, that indictment should be quashed. To hold a person to answer to such an empty indictment for a capital or otherwise infamous federal crime robs the Fifth Amendment of much of its protective value to the private citizen.

Here, as in *Holt v. United States,* 218 U. S. 245, substantial and rationally persuasive evidence apparently was presented to the grand jury. We may fairly assume that the evidence before that jury included much of the

testimony later given at the trial by the three government agents who said that they had testified before the grand jury. At the trial, they summarized financial transactions of the accused about which they were not qualified to testify of their own knowledge. To use Justice Holmes' phrase in the *Holt* case, such testimony, standing alone, was "incompetent by circumstances" (*supra,* at 248), and yet it was rationally persuasive of the crime charged and provided a substantial basis for the indictment. At the trial, with preliminary testimony laying the foundation for it, the same testimony constituted an important part of the competent evidence upon which the conviction was obtained.

To sustain this indictment under the above circumstances is well enough, but I agree with Judge Learned Hand that "if it appeared that no evidence had been offered that rationally established the facts, the indictment ought to be quashed; because then the grand jury would have in substance abdicated." 221 F. 2d 668, 677. Accordingly, I concur in this judgment, but do so for the reasons stated in the opinion of the Court of Appeals and subject to the limitations there expressed. See also, Notes, 62 Harv. L. Rev. 111; 65 Yale L. J. 390.