**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Roy Clare MARKEY,**
**Defendant-Appellant.**

**No. 82–1145.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 22, 1982.

Decided Nov. 12, 1982.

---

Frank S. Spies, Grand Rapids, Mich., Bernard F. Finn, Dood & Finn, Lansing, Mich., for defendant-appellant.

John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Brenda E. Braceful, Asst. U.S. Atty., for plaintiff-appellee.

Before MARTIN, Circuit Judge, BROWN, Senior Circuit Judge, and BERTLESMAN, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Roy Clare Markey appeals his convictions on three counts of filing false statements with the Department of Housing and Urban Development, in violation of 18 U.S.C. § 1001.[1]

Markey is a Lansing, Michigan businessman who owns extensive rental real estate and a builder's supply company. Between October, 1976 and February, 1978, Markey purchased three repossessed residential properties from the Federal Housing Administration. He obtained these properties by submitting the highest bids in excess of the FHA's advertised minimum valuations. On the bid form for each tract, Markey indicated that the property would be occupied by his son, a designation which qualified his bid for the FHA's "owner-occupant" classification. Agency policy dictates that "owner-occupant" bids receive automatic priority over "non-owner-occupant" bids.

No member of Markey's family ever moved into any of the homes purchased from the FHA. Instead, Markey bulldozed the house on the first tract and constructed a new rental unit in its place. The other two houses he repaired and offered for rent or sale to the public. Markey never notified the FHA of his "change in plans."

After an FBI investigation of Markey's conduct, a grand jury returned a three-count indictment. The case proceeded to a jury trial in the Western District of Michigan.

At trial, Markey testified that he purchased the FHA houses in the anticipation that college and careers would induce his children to settle in the neighborhoods where the properties were located. In that event, he intended to provide the children with housing. When Markey's "plans" for the children failed to materialize, he incorporated the FHA properties into his real estate business. Markey admitted that he had never discussed his purchase of the properties with his children or explained to them that he intended the houses for their use.

---

\* Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1. Section 1001 provides:

   "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The jury found Markey guilty on all three counts of the indictment. Markey filed post-trial motions for dismissal of the indictment and for a judgment of acquittal. The District Court denied both motions. The court placed Markey on five years' probation and imposed a fine of $12,000.

On appeal, Markey raises four issues. First, he contends that the District Court erred in denying his motion to dismiss the grand jury indictment. Second, he argues that the government's proof of his "criminal intent" was insufficient as a matter of law to support a jury verdict. Third, he claims that the trial judge placed improper pressure on the jury to reach a speedy verdict. Fourth, he asserts that he was entitled to a separate trial on each count of the indictment.

Markey's first argument—that the indictment was invalid—is without merit. In support of this contention, Markey asserts only that FBI Agent Frank Kortyka's grand jury testimony was "slim and vague." Specifically, he points out that Kortyka failed to bring his investigatory file to the hearing and was therefore "vague in his testimony about dates and numbers." At one point in his testimony, Kortyka referred to the United States Attorney's draft indictment. Markey also objected to Kortyka's failure to name the HUD "Area Property Manager" who furnished him with certain information in the course of an interview.

■ Markey's objections to the grand jury proceedings are insufficient to compel dismissal of the indictment. It is well-settled in this circuit that a defendant who wishes to challenge an indictment valid on its face bears a heavy burden indeed. *United States v. Battista,* 646 F.2d 237, 242 (6th Cir.1981). The validity of an indictment is not affected by the type of evidence presented to the grand jury, even though that evidence may be incompetent, inadequate or hearsay. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

■ Markey relies on *United States v. Estepa,* 471 F.2d 1132 (2d Cir.1972), a controversial opinion which espouses a broad view of the federal courts' supervisory powers over the government's conduct during grand jury proceedings. This court specifically rejected the *Estepa* approach in *United States v. Barone,* 584 F.2d 118, 125 (6th Cir.1978); we decline to reconsider the question here. Instead, we adhere to our position in *United States v. Nembhard,* 676 F.2d 193 (6th Cir.1982), which suggests that the court's supervisory powers are properly invoked "only on a showing of demonstrated and longstanding prosecutorial misconduct." 676 F.2d at 199. Markey's objections to Kortyka's testimony fall far short of such a showing.

■ Markey addresses his second argument to the sufficiency of the evidence concerning his "criminal intent." He observes, correctly, that "intent to deceive" is an essential element of the crime described in section 1001. *United States v. Lichtenstein,* 610 F.2d 1272, 1276–7 (5th Cir. 1980). According to Markey, even if the evidence is viewed in the light most favorable to the government, it is subject to equally plausible inferences of guilt or innocence. If we accept this characterization of the evidence presented at trial, our decision in *United States v. Leon,* 534 F.2d 667 (6th Cir. 1976) mandates reversal of Markey's conviction. *See also United States v. Saunders,* 325 F.2d 840 (6th Cir. 1964), *cert. denied,* 379 U.S. 978, 85 S.Ct. 677, 13 L.Ed.2d 568 (1965).

We have reviewed the trial testimony with great care, and acknowledge that this issue is a close one. On balance, however, we believe the government introduced enough circumstantial evidence of Markey's "intent to deceive" to support the jury's verdict. First, Markey admitted that he never discussed his purchase of the houses with the children for whose benefit he ostensibly made the transactions. Furthermore, he first maintained that he was planning to give the second tract to his stepdaughter; however, when questioned about a "blood relative" requirement of the FHA's "owner-occupancy" policy, he

changed his story and indicated that the house was for his son. Finally, he failed to notify the FHA of the "changed circumstances" which led him to convert the houses to rental property. No single portion of this evidence is conclusive of Markey's "intent to deceive." Cumulatively, however, we do not believe the trial testimony was "equally susceptible" to inferences of guilt or innocence. *Leon* is thus inapplicable.

In his third argument, Markey contends that the District Judge "coerced" the jury into reaching a speedy verdict. This allegation is based on the judge's comment, at the conclusion of trial, that the courthouse would be available the following morning (Christmas Eve) if the jury was unable to reach a consensus that afternoon. Markey raises this objection for the first time on appeal; he is therefore entitled to relief only if the District Judge's remarks constituted "plain error." *United States v. Giacalone,* 588 F.2d 1158, 1167 (6th Cir.), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1978).

 In support of his position, Markey relies on a number of "Allen Charge" cases, including *United States v. Scott,* 547 F.2d 334 (6th Cir.1977) and *United States v. Taylor,* 530 F.2d 49 (5th Cir.1976). We have reviewed these authorities and believe them to be inapposite. In determining whether or not an instruction is "coercive," a reviewing court must consider the totality of circumstances surrounding the instruction and evaluate it in context. *Jenkins v. United States,* 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). Viewed in context, this challenged instruction presents a situation analogous to that in *United States v. Green,* 523 F.2d 229 (2d Cir.1975), where the Second Circuit found that the trial judge's charge was *not* "likely to give the jury the impression that it was more important to be quick than to be thoughtful." *Id.* at 236. In the present case, we cannot fairly characterize the District Judge's remarks to the jury as "plain error."

Finally, Markey contends that the District Court committed reversible error when it denied his request for a separate trial on each count of the indictment. Under Rule 14, Fed.R.Crim.P., the disposition of a motion for severance is entrusted to the trial judge's sound discretion. *See United States v. Tarnowski,* 583 F.2d 903, 906 (6th Cir.1978). Markey has failed to demonstrate that the District Court's decision not to grant severance was an abuse of discretion.

The judgment of the District Court is affirmed.