**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas D. POWELL,**
**Defendant-Appellant.**

No. 85–1984.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 16, 1986.

Decided July 24, 1987.

Rehearing and Rehearing En Banc
Denied Sept. 4, 1987.

---

Robert P. Hurlbert, (court-appointed), Bloomfield Hills, Mich., for defendant-appellant.

Susan M. Daltuva, Asst. U.S. Atty., Detroit, Mich., Michael C. Leibson, Patricia G. Blake, Asst. U.S. Attys., for plaintiff-appellee.

Before NELSON and RYAN, Circuit Judges, and ENSLEN,* District Judge.

DAVID A. NELSON, Circuit Judge.

Appellant Thomas Powell entered a conditional guilty plea to a charge of having engaged in a continuing criminal enterprise through the importation and distribution of drugs over a period of years. He now appeals his conviction, contending that the grand jury that indicted him abdicated its duty independently to review and evaluate the evidence on which the indictment was supposed to have been based. Although Mr. Powell denies it, his appeal is essentially a challenge to the competency and sufficiency of the evidence presented to the grand jury. Because such matters are normally beyond the scrutiny of the federal courts, we shall affirm the conviction; in doing so, however, we note our disapproval of the manner in which the proceedings before the grand jury appear to have been handled.

---

* The Honorable Richard A. Enslen, United States District Court for the Western District of Michigan, sitting by designation.

On July 20, 1984, a federal grand jury in the Eastern District of Michigan indicted appellant Powell and two others on five counts. The first two counts charged violations of 21 U.S.C. §§ 846 and 963 in the form of a conspiracy to possess marijuana with intent to distribute it and a conspiracy to import marijuana over a period beginning in 1972 and continuing through 1981. Counts Three and Four alleged violations of 21 U.S.C. § 841(a)(1) in May of 1980 and July of 1981 by possession of marijuana with intent to distribute it. The final count charged the defendants with having violated 21 U.S.C. § 848 by engaging in a continuing criminal enterprise that consisted of a decade of drug activities.

On December 3, 1985, the government filed a superceding information, corresponding to Count Four of the indictment, charging possession, with intent to distribute, of approximately 18,000 lbs. of marijuana. Mr. Powell then agreed to plead guilty to Count Five of the indictment (continuing criminal enterprise) and to the offense charged in the superceding information, possession of the 18,000 pounds of marijuana. The plea to the possession charge was unconditional, and the plea to the continuing criminal enterprise charge preserved certain issues for appellate consideration. It was agreed that if Mr. Powell prevailed on the appeal he would be allowed to withdraw his plea as to Count Five. It was further agreed that Counts One through Four of the indictment would be dismissed, and that state drug charges pending in Florida would be dropped also.

The district court accepted the guilty plea and sentenced Mr. Powell to concurrent ten-year terms for possession and for continuing criminal enterprise. Although a reversal of the continuing criminal enterprise conviction could affect neither the guilty plea nor the ten-year sentence for the possession offense charged in the information, such a reversal might result in Mr. Powell's becoming eligible for parole sooner than he otherwise would.

The record discloses that the indicting grand jury was initially sworn on March 1, 1983, and that during the course of its service it considered 131 different criminal matters. On their first day of duty, the grand jurors were told that they were an independent body and were not to act as a "rubber stamp" for the United States Attorney's Office. They were further informed that grand jurors may consider hearsay testimony, but have the right to request a witness possessing first-hand knowledge. The grand jury was to have a life span of 18 months, and although active service was to last only six months, for 12 months thereafter the grand jury was subject to recall to complete ongoing investigations.

The contested indictment was not returned until July 20, 1984. The transcript of the grand jury proceedings for that day contains the testimony of Edward Fontanive, an Internal Revenue Service agent who was involved in the investigation of the appellant and the two others named in the indictment. An Assistant United States Attorney distributed a proposed indictment prior to the agent's testimony and told the grand jurors that the agent would provide a summary of the case, "since this was one of the first matters that you have had in your long term of Grand Jury service." After Agent Fontanive was sworn, the prosecutor told him that she would like "to basically go through this indictment with you so that you can refresh the Grand Jury's recollection as far as the evidence that would be used to substantiate the various counts of this indictment." She requested that the agent specify what evidence related to each of the three individuals charged in the indictment.

The indictment is a 13 page document that enumerates over 30 overt acts, beginning in 1972 and continuing through 1981, involving the importation, storage, and distribution of marijuana and liquid hashish. In going through the indictment Agent Fontanive occasionally provided some elaboration, but most of the testimony (which takes up 40 pages of transcript) simply paraphrased the indictment's description of the overt acts and added the name or names of the individuals who had provided government investigators with the supporting information.

After the agent's review of the indictment, the Assistant United States Attorney asked the members of the grand jury if they had any questions for the agent or wanted a further review of the details on any of the numerous overt acts charged. Several grand jurors asked questions, and after all inquiries had been answered the prosecutor informed the grand jurors that:

"The various witness statements and things of that nature are available for your review if you have any particular questions on any of those various individuals. And Special Agent Fontanive would be able to provide those to you. "Any other questions at this time? If not, I would like to submit this particular indictment which deals with the five counts that we have reviewed for you and request an indictment for the three individuals, Thomas D. Powell, Glenn Kavalich and Solomon Abecasis."

The grand jurors posed no further questions, and the prosecutor, the agent, and the court reporter left the grand jury room. The record of the day's proceedings terminates at that point, and for purposes of this appeal we will assume that the grand jurors did not avail themselves of the opportunity to review the supporting witness statements to which Agent Fontanive referred in his testimony.

The only other evidence pertaining to Mr. Powell that appears to have been presented to the grand jury is described in the following rather skeletal stipulation:

"The government agents took statements from approximately 46 witnesses who provided information deemed relevant to the case against Defendant Thomas Powell. Ten witnesses gave testimony concerning Powell to prior grand juries. None of these ten witnesses appeared in person before the indicting grand jury. An excerpt of the previous grand jury testimony of one of the witnesses, Earl Paxton, was read to the indicting grand jury by an Assistant United States Attorney. One year prior to the return of the indictment, the indicting grand jury heard the testimony of one non-agent witness which was relevant to the ultimate charges in the indictment against Thomas Powell."

The record before us contains no other reference to the unnamed "non-agent witness," or to that witness' testimony. We do know, however, that the testimony of Witness Paxton was read to the grand jury on November 4, 1983. Paxton's testimony was to the effect that Mr. Powell had imported "hash oil" in 1974; the testimony clearly supported Count Five of the indictment. (The indicting grand jury also heard testimony on certain tax law violations for which Mr. Powell was indicted and convicted in a separate criminal proceeding.)

Mr. Powell moved, among other things, for a dismissal of the entire indictment on the ground that the government had deprived the grand jury of the right and opportunity to review the evidence. Emphasizing that Agent Fontanive had no personal knowledge of the facts, and that his summary included various inaccuracies and omissions, Mr. Powell contended that the "grand jury was biased by being given only Agent Fontanive's conclusions and inferences and few or none of the underlying facts." Mr. Powell also moved to dismiss Count Five for failure to set forth sufficient predicate criminal offenses. After a hearing, both motions were denied.

\*    \*    \*    \*    \*    \*

■ The principal duties of grand jurors are to determine whether probable cause exists to believe that a crime has been committed and to protect the accused from unfounded criminal prosecutions. *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). In discharging their office, grand jurors traditionally have been "accorded wide latitude to inquire into violations of criminal law," and their investigation is "unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *Id.* A grand jury proceeding is not an adversary hearing to determine the guilt or innocence of the particular individual accused, but an *ex parte* investigation that decides whether prosecution shall commence. *Id.* at 343–44, 94 S.Ct. at 617–18.

"The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, *Costello v. United States*, [350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956)]; *Holt v. United States*, 218 U.S. 245 [31 S.Ct. 2, 54 L.Ed. 1021] (1910)...." *Calandra*, 414 U.S. at 344–45, 94 S.Ct. at 618.

The Fifth Amendment does not require federal courts to examine the sufficiency of the evidence upon which a grand jury relies to bring a true bill.

Mr. Powell disavows any intention to challenge the sufficiency of the evidence. Instead, he characterizes the issue as whether grand jurors may lawfully transfer to a government agent the obligation independently to evaluate the evidence against the target of a grand jury investigation. Regardless of how the issue is framed, however, we believe the district court was correct in considering *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), controlling.

Mr. Costello had moved, both prior to trial and after the close of the government's case, for dismissal of an indictment that had been returned, as the trial testimony revealed, after three government investigators, with no first-hand knowledge of the criminal transactions, had appeared before the grand jury as the only witnesses to testify. *Id.* at 361, 76 S.Ct. at 407. The Supreme Court firmly rejected Costello's argument that the indictment was constitutionally tainted because of the nature of the grand jury proceedings on which it was based:

"[N]either the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act.... If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would

be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello*, 350 U.S. at 362–63, 76 S.Ct. at 408 (footnote omitted).

The Supreme Court refused to invoke its supervisory powers, because to permit indictments to be challenged for lack of adequate or competent evidence "would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules." *Id.* at 364, 76 S.Ct. at 409.

In light of *Costello*, it is not surprising to find that this Circuit has declared that the "validity of an indictment is not affected by the type of evidence presented to the grand jury, even though that evidence may be incompetent, inadequate or hearsay." *United States v. Markey*, 693 F.2d 594, 596 (6th Cir.1982). We held the challenge to the validity of the indictment in *Markey* to be "without merit," even though the FBI agent's testimony before the grand jury was arguably "slim and vague" because the agent had failed to bring his investigatory file to the hearing. *Markey*, 693 F.2d at 596.

In *United States v. Short*, 671 F.2d 178 (6th Cir.), *cert. denied*, 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982), we did not hesitate to reverse where the district court had examined the entire grand jury record and then dismissed a count in the indictment because there was no evidence to· support that charge. After canvassing Supreme Court and Sixth Circuit precedent, *Short* reiterated that criminal cases should not be "further attenuated by preliminary trials concerning the adequacy of grand jury proceedings, a concern particularly noted in *Costello*." *Short*, 671 F.2d at 182 (quoting *United States v. Barone*, 584 F.2d

118, 125 (6th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979)). *Short* endorsed the conclusion of the Fifth Circuit in *United States v. Cruz,* 478 F.2d 408, 412 (5th Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973), that "[w]e will not review the sufficiency of the evidence, *if any,* supporting the grand jury indictments in this case." (Emphasis supplied.)

■ Finally, there is to be "strict application" of the rule against inquiry into grand jury processes except where it is alleged that the body is "biased or illegally constituted." *Short,* 671 F.2d at 182. "Bias," as used in *Costello,* only "refers to a grand jury which is predisposed in one way or another...." *United States v. Adamo,* 742 F.2d 927, 936 (6th Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985). A claim that the grand jury becomes biased because the prosecutor presented evidence which an appellant considers inadequate or incompetent "cannot be reconciled with the Supreme Court's holding" in *Costello. Id.* at 939.

■ We review a district court's refusal to dismiss an indictment only for abuse of discretion. *United States v. Brown,* 574 F.2d 1274, 1276 (5th Cir.), *cert. denied,* 439 U.S. 1046, 99 S.Ct. 720, 58 L.Ed.2d 704 (1978); *United States v. Al Mudarris,* 695 F.2d 1182, 1188 (9th Cir.), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983). The district court did not abuse its discretion in refusing to dismiss the indictment here; to have dismissed Mr. Powell's indictment, on the contrary, would have been to do that which the Supreme Court says a court ought not do. Given the traditional "unfettered" independence of the grand jury mechanism, it is not the part of the federal courts to question the scope of the grand jurors' inquiry.

■ Mr. Powell informed the district court that he was "challenging the deprivation of his *individual* right to indictment by a Grand Jury, rather than alleged prejudice arising from prosecutorial misconduct. Indeed, Defendant Powell is not so much invoking the supervisory powers of the Court over the Grand Jury process, as the Court's responsibility to enforce the Constitution." The district court considered exercising its supervisory authority anyway, but rejected the idea. Citing *United States v. Griffith,* 756 F.2d 1244, 1249 (6th Cir.), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985), the court pointed out that this Circuit "has admonished lower courts to ... exercise their supervisory powers sparingly;" the defendant must demonstrate both that prosecutorial misconduct is a "long-standing or common problem in grand jury proceedings" in that district and that he was "prejudiced by the prosecutor's actions." *Id.* at 1249. The district court noted that the government had conceded that the preferred method for presenting evidence to the grand jury had not been followed in this instance. However, the district court found, and we agree, that Powell had failed to demonstrate a history of abuse of the grand jury process in the district. Should we be confronted with further cases such as this arising in the Eastern District of Michigan, it is not inconceivable that we may conclude, viewing those cases against the background of this one, that such a history has been demonstrated; that would not help Mr. Powell, however.

We find no merit in Mr. Powell's other contentions, and the judgment of conviction on the conditional guilty plea is AFFIRMED.

ENSLEN, District Judge, concurring.

In light of the applicable Sixth Circuit precedent on the grand jury issue, I join in Judge Nelson's opinion. I write separately only to express my *strong* displeasure about the manner in which the Assistant United States Attorney presented the government's evidence against the appellant to the grand jury. The grand jury's function is to determine "whether there is probable cause to believe a crime has been committed" and to protect "citizens against unfounded criminal prosecutions." *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). To fulfill this function, a grand jury is empow-

ered to conduct a wide-ranging, *ex parte* investigation into the case before it. As the Supreme Court has stated, " '[i]t is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.' " *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (*quoting Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919)).

Ironically, in this case the government apparently attempted to limit, not expand, the information presented to the grand jury that indicted the appellant. The primary evidence the government presented to the grand jury was the testimony of a government agent who basically repeated the allegations contained in the indictment, supplying the sources of the allegations and, occasionally, supporting details. I believe that the method by which the government presented its case to the grand jury denigrates the role of the grand jury and prevents the grand jury from fulfilling its historical and constitutionally established function. I fully agree with Judge Nelson that any future cases of abuse of the grand jury system in the Eastern District of Michigan may justify this Circuit's exercise of its supervisory power to ensure that the United States Attorney for the Eastern District of Michigan properly employs the grand jury system.