**UNITED STATES of America, Plaintiff–Appellant,**

v.

**James Wiley CRAFT, Defendant– Appellee.**

**No. 96–5180.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1996.

Decided Feb. 3, 1997.

Patrick H. Molloy, Office of the U.S. Attorney, Lexington, KY, Daniel S. Goodman, U.S. Department of Justice, Criminal Appellate Section, Washington, DC (argued and briefed), for Plaintiff–Appellant.

Lawrence R. Webster, Pikeville, KY (argued), Daniel F. Dotson, Whitesburg, KY (briefed), for Defendant–Appellee.

Before: KEITH, MERRITT, and
SUHRHEINRICH, Circuit Judges.

MERRITT, J., delivered the opinion of the
court, in which SUHRHEINRICH, J.,
joined. KEITH, J. (pp. 1129–31), delivered a
separate dissenting opinion.

MERRITT, Circuit Judge.

This criminal appeal raises statute of limitation issues. It is an appeal by the Justice Department from the grant of a motion to dismiss two counts of a six-count indictment. District Judge Wilhoit in a well-reasoned opinion dismissed Count I (conspiracy to obstruct justice in violation of 18 U.S.C. §§ 371, 1503) and Count III (obstruction of justice in violation of § 1503). We affirm the judgment below because we agree that the two counts are barred by a five-year statute of limitations. The criminal case arises from alleged obstruction of justice in a federal civil case—more specifically from the efforts of the defendant, a Kentucky lawyer, to get around his failure to file on time in Letcher County, Kentucky, the probate papers for the appointment of the administratrix of the estate of the decedent in a personal injury, wrongful death action.

The basic issue in the case is whether the filing of a notice of appeal in this Court from the dismissal of the civil, wrongful death action was a part of the criminal offense for purposes of calculating when the five-year limitations period began to run. The federal criminal case was filed on August 24, 1995, more than five years after all of the relevant events had occurred except for the appeal to this court from the dismissal of the wrongful death action in the district court. The question before us is whether the defendant's act of filing an appeal from the dismissal—listed as an overt act in the conspiracy count—is a relevant criminal act that saves the case under the statute of limitations. (In conspiracy cases, federal courts ordinarily hold that each new, overt act that is calculated to effect the object of the conspiracy renews the running of the statute. *See Grunewald v. United States*, 353 U.S. 391, 396–97, 77 S.Ct. 963, 969–70, 1 L.Ed.2d 931 (1957); *Developments in the Law: Criminal Conspiracy*, 72 *Harv. L.Rev.* 920, 960–62 (1959)).

\* \* \*

On February 8, 1987, Ivan Michael Cook was killed in a car accident in Kentucky. Ten days later, Patricia Sparks, Cook's mother, hired the defendant to represent Cook's estate in an action to recover for Cook's death. Exactly two years after Cook's death, on February 8, 1989, defendant filed a wrongful death action in Letcher Circuit Court on behalf of Patricia Sparks as the administratrix of the estate. The case was removed to federal court on March 23, 1989. In July 1989, the defendants in the wrongful death action filed a summary judgment motion to dismiss the action because Patricia Sparks had not been formally appointed administratrix of her son's estate and therefore had no standing to bring the action under Kentucky law. The defendants also contended that even if Patricia Sparks were now appointed, the action would be barred by Kentucky's statute of limitations.

At this point under the allegations of the indictment, defendant Craft—apparently unaware that the doctrine of tolling might save his case and believing that his case would be dismissed—enlisted the aid of Judge Larry Collins of the Letcher County probate court to "fabricate" and backdate documents showing that Patricia Sparks had been duly appointed administratrix of her son's estate as of February 18, 1987. These so-called "fabricated documents" were filed in the federal civil case in November 1989. The federal judge assigned to hear the civil case, Judge Hood, ruled that although the documents in question were purportedly signed by the state judge in February 1987, the documents were not properly *filed* at that time with the clerk of the probate court. (No tolling justification was raised.) Judge Hood therefore dismissed the wrongful death action on that ground. In *Sparks v. Marshall*, Civ. Act. No. 89–79 (E.D.Ky. May 31, 1990), the court noted, "The unusual twist to this case is that no formal petition for appointment of an administrator was filed [in the state probate court] until November 1989.... The order of appointment was not entered by the clerk of the court until that time. The question

here is, thus, whether the order was valid when signed by the court on February 18, 1987." Judge Hood ruled that it was not a valid appointment and that the plaintiff lacked standing under Kentucky law.

Defendant filed a notice of appeal of that ruling to this Court—the only act in the chain within the five year period preceding the indictment—but the appeal was dismissed because it was filed one day too late. Defendant Craft was subsequently sued for malpractice by Patricia Sparks.

On August 24, 1995, more than five years after the "fabricated" documents were filed in the federal case and more than five years after Judge Hood dismissed it, defendant was charged with two counts of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, two counts of obstruction of justice by intimidation of witnesses and jurors in violation of 18 U.S.C. § 1503, one count of perjury in violation of 18 U.S.C. § 1621 and one count of subornation of perjury in violation of 18 U.S.C. § 1622. Defendant moved to dismiss Count I (conspiracy to obstruct) and Count III (obstruction of justice) as time barred.

The defendant filed a pretrial motion under Federal Rule of Criminal Procedure 12(b) to dismiss the two counts of the indictment on statute of limitations grounds. On appeal the government frames the case as presenting three issues: (1) whether it was proper for the district court to rule on the statute of limitations issue before trial, (2) whether the filing of a notice of appeal constitutes an "overt act" under 18 U.S.C. § 371 which extends the limitations·period, and (3) whether the filing of the notice of appeal was an act which continued to obstruct justice in violation of 18 U.S.C. § 1503 within the limitations period.

### Pretrial Dismissal of Indictment Count .

■ As to the first issue, the government erroneously contends that the district court could not make factual findings or conclusions concerning the statute of limitations issue on a pre-trial motion because that finding was solely within the province of the factfinder and not suitable for pretrial disposition. It is elementary that Rule 12(b) of the Federal Rules of Criminal Procedure permits pretrial consideration of any defense that "is capable of determination without the trial of the general issue." Courts usually say that a motion to dismiss is "capable of determination" before trial if it involves questions of law instead of questions of fact on the merits of criminal liability.

■ Normally, Rule 12(b) motions may appropriately raise for consideration such matters as "former jeopardy, former conviction, former acquittal, *statute of limitations,* immunity [and] lack of jurisdiction." *United States v. Smith,* 866 F.2d 1092, 1096 n. 3 (9th Cir.1989) (emphasis added). District courts may ordinarily make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder.

Rule 12 was written to encourage the making of motions prior to trial. Notes of Advisory Committee to the 1975 Amendments to Fed.R.Crim.P. 12 (advising district courts to defer rulings on pretrial motions only for good cause). Rule 12 directs the district court to make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion as long as the court's findings on the motion do not invade the province of the jury. *United States v. Jones,* 542 F.2d 661, 664–65 (6th Cir.1976) (deciding legality of interspousal wiretapping on pretrial motion). Rule 12 vests the district court with authority to "determine [preliminary] issues of fact in such a manner as the court deems appropriate." Notes of Advisory Committee to the 1975 Amendments to Fed.R.Crim.P. 12.

■ The case primarily relied on by the government in its brief, *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), is not a statute of limitations case; it concerns the validity of the indictment and the grand jury proceedings. The government places its reliance on this general language: "An indictment returned by a legally constituted and unbiased grand jury ... if valid on its face, is enough to call for trial of the charge on the merits." *Id.* at 363, 76 S.Ct. at 409. *Accord United States v. Calan-*

*dra,* 414 U.S. 338, 344–45, 94 S.Ct. 613, 618–19, 38 L.Ed.2d 561 (1974) ("An indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. . . ."). A conspiracy indictment is valid if it embraces the essential elements of the conspiracy charged, adequately apprises the defendant of the charges so that the defendant may intelligently prepare his or her defense and provides protection against future prosecutions. *Sandroff v. United States,* 158 F.2d 623, 624–25 (6th Cir.1946).

The defendant is not challenging the facial validity of the indictment or the grand jury proceedings due to juror bias, prosecutorial misconduct, or some other flaw in the grand jury process. Nor is the challenge related to the adequacy of the evidence before the grand jury. *Costello* does not address the crux of the issue here. *Costello* and *Calandra* stand for the proposition that criminal cases generally should not be attenuated by preliminary or "mini-" trials concerning the adequacy of the grand jury proceedings or the competency of the evidence presented to the grand jury. *Cf. United States v. Short,* 671 F.2d 178, 181–82 (6th Cir.1982) (reversing district court's dismissal of indictment because indictment valid on its face and grand jury legally constituted; therefore finding district court may not test government's evidence pretrial).

The statute of limitations is an affirmative defense that may be waived under Federal Rule of Criminal Procedure 12(f) if not raised at or before trial. *See, e.g., United States v. Del Percio,* 870 F.2d 1090, 1093 (6th Cir. 1989) ("[E]very circuit court of appeals to address the issue has held that criminal statutes of limitations are waivable affirmative defenses"). It is therefore proper, and in some cases may be necessary, to raise the question independently, if the court has set a date for filing pretrial motions under Rule 12(c). We agree with the district court that the statute of limitations question is one that should be separated from the merits of the underlying conspiracy charge. Here, the facts relating to the disposition of the statute of limitations issue are stated in the indictment or constitute preliminary facts easily isolated from the issues on the merits. These facts are essentially undisputed and raise a legal issue, not a factual one. The dissenting opinion does not mention or attempt to describe any facts that are in dispute on the statute of limitations issue. The indictment itself alleges the nature of the conspiracy claimed, as described below. It is conceded by the government that the filing of the notice of appeal to this court by defendant is the only act which could possibly bring the criminal case within the limitations period. No additional facts are needed to adjudicate this issue. If our dissenting brother believes that there are facts in dispute on this issue, he should at least state specifically the particular facts in dispute which are material to the limitations issue.

### The Filing of a Notice of Appeal as an "Overt Act" Under 18 U.S.C. § 371

Section 371 of U.S.Code Title 18, conspiracy to commit an offense or to defraud the United States, is defined as follows:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined . . . or imprisoned. . . .

18 U.S.C. § 371. The statute of limitations period for section 371 is five years, which period runs from the date of the commission of the last overt act in furtherance of the conspiracy. The government contends that defendant "continued the scheme by filing various pleadings and performing various acts all designed to obstruct the due administration of justice" and that the conspiracy remained viable until at least March 1, 1991, the date on which the Sixth Circuit dismissed the appeal in the wrongful death action. The government specifically contends that the Notice of Appeal filed in the Sixth Circuit by defendant in the wrongful death action constitutes an "overt act" under the statute. Indictment at 8. Defendant contends that the filing of the Notice of Appeal does not constitute an overt act and that no overt act oc-

curred within the five years preceding August 24, 1995.

■ The district court concluded, and we agree, that the object of the alleged conspiracy, as stated in the indictment, was "to fabricate and backdate documents for filing" in federal court, *i.e.* to "fabricate" documents in order to get Mrs. Sparks appointed the personal representative of the decedent's estate in the wrongful death action. (Dist. Ct. Op. at 7) The object of the conspiracy alleged in the indictment did not extend, as the government contends, to the final outcome of the whole case, *i.e.*, obtaining a favorable verdict. Contrary to the government's assertion, the wrongdoing identified in the indictment focuses on the *means* defendant used to try to win the case—the backdating and fabrication of documents—not the fact that defendant wished to prevail on the merits in the action. The Notice of Appeal was not reasonably calculated to effect the specific object of the conspiracy to fabricate and file anymore than the government's motion to dismiss the appeal or the court's order granting the motion was a part of the conspiracy. The Notice was filed to try to overturn the district court's rulings on Kentucky law. The Notice of Appeal was no more an element of the offense or an act of obstruction than was the fact that the statute of limitations had run by the time it was filed.

Defendant here certainly hoped to prevail in the wrongful death action, but that effort was not "conspiratorial"—it was simply what defendant was hired to do. Accordingly, if the general prosecution of the wrongful death action was not part of the conspiracy, filing the Notice of Appeal could not constitute an overt act in furtherance of the conspiracy. The Notice of Appeal was too remote to be a relevant or material part of the conspiracy, too remote to have had a proximate relationship with the immediate wrong alleged.

### Pretrial Dismissal of the Obstruction of Justice Count on Statute of Limitations Ground

■ Section 1503 provides in pertinent part:

Whoever ... corruptly ... influences, obstructs, or impedes or endeavors to influence, obstruct or impede, the due administration of justice shall be punished....

18 U.S.C. § 1503 (1994). In a section 1503 proceeding, the government need not show that the act actually obstructed justice. If the act had "the natural and probable effect of impeding justice" it constitutes an "endeavor" to obstruct justice in violation of section 1503.

■ Acts that distort the evidence to be presented or otherwise impede the administration of justice are violations of 18 U.S.C. § 1503. The act of altering or fabricating documents used or to be used in a judicial proceeding would fall within the obstruction of justice statute if the intent is to deceive the court. *See, e.g., United States v. Mullins,* 22 F.3d 1365 (6th Cir.1994) (defendant altered aviation logbooks in response to grand jury subpoena of logs); *United States v. Jeter,* 775 F.2d 670 (6th Cir.1985), *cert. denied,* 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986) (holding that illegally obtaining and selling copies of grand jury transcripts is covered by § 1503); *United States v. Faudman,* 640 F.2d 20 (6th Cir.1981) (finding that altering corporate records subpoenaed by grand jury violates § 1503).

A jury could find that backdating and filing judicial documents would have the "natural and probable effect" of impeding justice if such act was illegal under Kentucky law and was an attempt to defraud the court. But such a finding would have to depend heavily on the interpretation of Kentucky law.

Had the appeal gone forward in the wrongful death action on its merits, the general issues would have related, as the government concedes in its brief in this action, to whether the *signing* or the probate *filing* date was the date on which Patricia Sparks became the personal representative of her son's estate under Kentucky law. (Gov't Br. at 25) We note that there is some authority in Kentucky that backdating documents would not constitute a violation of Kentucky law under the circumstances of this case.

■ Under Kentucky law, a *nunc pro tunc* order is generally permissible if used to place

in the record evidence of judicial or official action that has already taken place and not to supply an omission of judicial action. *Nunc pro tunc* orders are generally used to correct ministerial or clerical errors and oversight. *Powell v. Blevins,* 365 S.W.2d 104 (Ky.Ct.App.1963). In *Powell,* the court stated that *nunc pro tunc* orders "must tie back to some tangible record made at the time. In no event can it be made to reflect something that did not happen." *Id.* at 106. In this case, the district court in the wrongful death action found that defendant was hired to recover for the wrongful death in February, 1987, and that the order of appointment was signed but "not entered by the clerk." If that is the case, a *nunc pro tunc* order might be effective to stretch back to the date of signing in February 1987. We make no finding on this issue because it is not necessary to our holding in this case nor has the issue been briefed. Whether the Kentucky probate courts would have permitted the backdating of documents to save the wrongful death action is purely speculative.

Kentucky law on the statute of limitations in wrongful death actions is confusing, and it is not entirely clear that the statute had run on the wrongful death action when Judge Hood dismissed the case. In *Conner v. George W. Whitesides Co.,* 834 S.W.2d 652 (Ky.1992), the Kentucky Supreme Court stated that

> if the personal representative is not appointed within a year after death but is appointed after that time, the one year anniversary of death is considered the date of appointment, and the personal representative has one year from the one year anniversary of death to commence a cause of action.

*Id.* at 655. *Conner* states that KRS 413.180 has been construed to "provide two years from the date of death to appoint a personal representative and commence a cause of action for wrongful death." *Id. See also Richardson v. Dodson,* 832 S.W.2d 888 (Ky.1992); *Everley v. Wright,* 872 S.W.2d 95 (Ky.Ct. App.1993).

█ The indictment in this case is based on a claim that the qualification of the administratrix was based on backdated documents

illegal under state law—false documents designed to deceive the district court. That may or may not be true. But the effort to appeal to this Court in order to get a ruling that Kentucky law would allow the backdating of documents to qualify the administratrix and save the wrongful death action came after the alleged obstruction ended. The effort to get an appellate court to employ a legal fiction under state law is not an obstruction of justice. The alleged crime had ended before the Notice of Appeal was filed.

Accordingly, the judgment of the district court dismissing Counts I and III as time barred is affirmed.

KEITH, Circuit Judge, dissenting.

Because I cannot agree that Fed.R.Civ.P. 12(b) extends to a district court the privilege of rewriting a validly constituted indictment before the court has heard any evidence in a case, and because I feel that proper respect for the values reflected in the decision in *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397, *reh'g denied,* 351 U.S. 904, 76 S.Ct. 692, 100 L.Ed. 1440 (1956), outweighs the interest in judicial efficiency that is served by dismissing part of this indictment in the pre-trial stage, I must respectfully dissent from the decision of this panel.

The majority opinion makes much of the fact that Rule 12(b) was intended to encourage pre-trial disposition of issues relying purely on legal analysis. However, as the opinion duly notes and then ignores, this does not grant the district court free rein to invade the province of the jury. *United States v. Jones,* 542 F.2d 661, 664–65 (6th Cir.1976). Deciding whether the district court crossed the line between proper pretrial disposition of matters of law and illicit invasion of the province of the fact-finder is the crux of my disagreement with the majority.

In the present case, the district court had before it a validly constituted indictment which encompassed in its charges an explanation of the conspiracy that the government proposed to prove at trial. Before hearing so much as one shred of evidence, and having

before it only two highly partisan renditions of the facts, the district court preceded to rewrite the indictment, substituting its own theory of the conspiracy for the government's. On the basis of its own opinion of what the conspiracy entailed, the district court dismissed several counts of the indictment. I cannot stress too strongly that the dismissal was predicted upon the district court's own opinion of what the aim of the conspiracy was, an opinion that was not formed with reference to any established fact.

The simple truth is that no evidence had been heard, and without the evidence, *no one* could yet establish with authority the precise aim of the conspiracy. The government has its theory, the district court and the majority here share another theory, and I can think of several other possibilities. The point is that the object of the conspiracy is a fact which needs to be established by the evidence. Until the evidence is heard, therefore, the government is entitled to some deference to its theory, if for no other reason than because, at the pre-trial stages, that theory is nothing more or less than the government's statement of what it proposes to prove at trial. It is not within the purview of the district court to tell the government that it must prove the district court's theory rather than its own. In sum, I believe that the actions of the district court in this case violate the *Jones* prohibition against invading the province of the fact-finder by providing an ultimate decision on an issue that properly should have been determined by the jury.

The *Costello* case also provides some guidance on the situation before the Court. That case directs that "[a]n indictment returned by a legally constituted grand jury ... if valid on its face, is enough to call for trial of the charge on the merits." 350 U.S. at 363, 76 S.Ct. at 409. This Circuit has long held that *Costello* should be read literally. *United States v. Powell,* 823 F.2d 996, 1000–01 (6th Cir.), *cert. denied,* 484 U.S. 969, 108 S.Ct. 464, 98 L.Ed.2d 403 (1987); *United States v. Adamo,* 742 F.2d 927, 936 (6th Cir.1984), *cert. denied sub nom. Freeman v. United States,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); *United States v.*

*Short,* 671 F.2d 178, 182 (6th Cir.), *cert. denied,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982). There is no challenge to the validity of the indictment at bar. Rather, the district court in effect erased the description of the conspiracy as the government proposed to prove it, and substituted its own theory of the conspiracy. This attempt to rewrite the indictment under the guise of disposing of a pre-trial issue surely violates the literal meaning of *Costello.* There was no challenge to the indictment's validity; thus, it should have been allowed to proceed to trial without any premature revision by the court below.

The majority makes much of the fact that *Costello* is not a statute of limitations case, but that is entirely beside the point. *Costello* directs that deference be accorded to the right of a valid indictment to proceed to trial on the charges it embodies. On the face of the valid indictment before the district court, the conspiracy was described as including acts which bring the indictment within the limitations period. Thus, on the face of the indictment, the statute is met. Until facts are established at trial that evidence the actual specifics of the conspiracy, including the time during which it was in operation and the acts which it encompassed, the statute of limitations is therefore not an issue. If at trial it becomes apparent that the proof does not support a theory of the conspiracy that includes acts sufficiently late in time to bring one or more counts of the indictment within the limitations period, then, and only then, may the district court dispose of those counts based on limitations grounds.

While the majority points out that the limitations defense can be waived if not raised, they conveniently fail to mention that once raised, as it has been in this case, the decision may be deferred until more facts are available. That is what the district court should have done in the present case. The limitations issue had been raised, and therefore was no longer subject to waiver. On the face of the indictment the statute of limitations was met, no evidence had been heard, and thus, no facts undermining that conclusion were yet established. Rather than intercede, and in so doing ignore the dictates of both *Costello* and *Jones,* the district court

should have deferred the statute of limitations analysis until it had had a chance to hear evidence regarding the scope and aim of the conspiracy.[1] Essentially, I believe that the district court erred in weighing two different values, both important to our judicial system, and in this case conflicting. The majority opinion implicitly agrees with the district court that the issues of judicial efficiency embodied in Rule 12(b) are the more important ones. I would say that the preeminent values ought to be deference to the government's right to attempt to prove at trial the allegations of its valid indictment, and deference to the jury in determining issues of fact.

Weighing the conflicting values of our system is an eternal problem faced by courts. As Learned Hand put it, "Justice, I think, is the tolerable accommodation of the conflicting interests of society." Learned Hand quoted in Life Magazine, Nov. 4, 1946, at 122–126. In the present case, I disagree with the majority about the proper manner of balancing the conflicting interests in this case. I believe that the district court's dismissal of two counts of the indictment was premature and should have been reversed. For that reason, I dissent.

1. The district court relies heavily on the decision in *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), in support of its actions in this case. However, in *Grunewald*, a trial had been conducted long before the Supreme Court rejected the government's theory of the conspiracy. This is crucial because no one would argue that a court cannot look at all the facts in evidence and determine that the government's theory of the conspiracy is not supported. However, it is entirely another matter to make this judgment before even one fact is in evidence. For that reason, *Grunewald* provides no shelter for the district court's actions in this case and in fact, serves only to highlight the inappropriateness of those actions.