NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0073n.06
Filed: January 24, 2008

Case Nos. 06-2208, 06-2515

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DESHAWN WELLS, | ) | DISTRICT OF MICHIGAN |
| a.k.a. Deshawn Geemes Wells, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BATCHELDER and MOORE, Circuit Judges; BUNNING[*], District Judge.

ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellant Deshawn Wells ("Wells") appeals the district court's order denying his motion to dismiss the criminal indictment. Wells's motion was premised on his claim that the Plaintiff-Appellee United States Government ("Government") had failed to provide prior to his plea hearing certain impeachment evidence in accordance with *Brady v. Maryland*, 373 U.S. 83 (1963). This claim is entirely foreclosed by the Supreme Court's holding in *United States v. Ruiz*, 536 U.S. 622 (2002), that the Government has no obligation to disclose such information prior to a defendant's entry of a guilty plea, and we therefore **AFFIRM** the judgment of the district court.

## I. BACKGROUND

_____

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

In the early morning hours of August 17, 2005, two officers of the Jackson, Michigan, police department on routine patrol heard a single gunshot followed by a series of rapid-fire gunshots. The officers proceeded immediately to the area from which the sound of the gunshots had come, and observed Wells moving away from the area with a silver object in his hand. Wells ignored the officers' orders to stop and fled on foot, pursued by the officers. During the pursuit, Wells discarded what the officers later determined to be a stolen .380 caliber Walther semi-automatic pistol. The officers eventually found and arrested Wells, who admitted possessing the firearm in question. A ballistics expert concluded that one of the shell casings recovered from the scene of the shooting had come from that gun.

Wells had at least one prior felony conviction, and on September 28, 2005, a federal grand jury indicted him on a charge of being a felon in possession of a firearm in violation of 42 U.S.C. § 922(g). On April 6, 2006, Wells pleaded guilty to the charge without the benefit of a Rule 11 plea agreement. Wells did not then, nor does he now, contest his guilt.

Initially the Government sought a four-level increase in Wells's offense level under United States Sentencing Guidelines § 2K2.1(b)(5) for the use of a firearm in connection with another felony offense. The Government intended to introduce evidence that Wells had fired the weapon at another person. But on August 14, 2006, the day before Wells's scheduled sentencing hearing, the Government withdrew its attempt to seek this enhancement because there was insufficient evidence to show that Wells had fired the gun at anyone, and because the Government had just come into possession of evidence that Wells would be able to use to impeach one of the police officers the Government intended to call as a witness. The impeachment evidence arises from facts not connected to this case.

The Government immediately disclosed the impeachment material, under a Protective Order, to both the district court and Wells; the court continued the sentencing hearing; and Wells filed a motion to dismiss the indictment on the grounds that he had not knowingly and voluntarily pleaded guilty because the Government had not disclosed the impeachment evidence prior to his guilty plea. On September 18, 2006, prior to ruling on Wells's motion to dismiss the indictment, the district court sentenced Wells to 38 months' incarceration, followed by two years of supervised release. Then, on November 21, 2006, the district court issued an opinion and order denying Wells's motion to dismiss the indictment, holding that under *Ruiz* the Government was not obligated to provide Wells with the impeachment evidence prior to his guilty plea. Wells timely appealed that decision.

## II. STANDARD OF REVIEW

We review for abuse of discretion the district court's decision denying Wells's motion to dismiss the indictment. *United States v. Overmyer*, 899 F.2d 457, 465 (6th Cir. 1990) (citing *United States v. Powell*, 823 F.2d 996, 1001 (6th Cir. 1987)).

## III. ANALYSIS

Wells raises two related issues on appeal. First, he argues that the Government violated his constitutional rights by not disclosing prior to the plea hearing the possible impeachment evidence regarding one of the arresting officers. Second, he argues that the Government's failure to turn over this evidence renders his guilty plea involuntary. Both alleged errors, Wells argues, warrant a dismissal of the indictment. As we will explain, Wells is wrong.

First, the Constitution does not require that the Government disclose impeachment information prior to entering into a plea agreement with a defendant or before a defendant pleads guilty. *Ruiz*, 536 U.S. at 629, 633. The Court was emphatic in *Ruiz* that the *Brady* rule requiring

3

such disclosures is linked to the Constitution's guarantee of a fair trial, *id*. at 628, and when a defendant pleads guilty, he "forgoes not only a fair trial, but also other accompanying constitutional guarantees." *Id*. (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). The need for impeachment information, the Court explained, is "more closely related to the *fairness* of a trial than to the *voluntariness* of the plea." *Id*. at 633 (emphasis original). The added burden imposed upon the Government in disclosing such information before plea negotiations is high, while the added benefit to the defendants is usually limited. *Id*. Contrary to Wells's assertions, *Ruiz* is directly on point and governs this case. And here, it is undisputed that the Government *did not even have* the information prior to Wells's plea hearing and the entry of his guilty plea. There is no merit to Wells's claim that the Government was required to turn over impeachment information prior to Wells's guilty plea.

Second, the Government's failure to disclose the impeachment information — even if it had been in possession of it prior to the entry of the guilty plea — does not render Wells's guilty plea involuntary. By pleading guilty, a defendant voluntarily relinquishes several constitutional rights. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969); *see also Brady v. United States*, 397 U.S. 742, 748 (1970) ("But the [guilty] plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial — a waiver of his right to trial before a jury or a judge."). A guilty plea procured from a defendant who does not understand and voluntarily waive those rights is procured in violation of the Due Process Clause and is void. *Id*.; *Brady v. United States*, 394 U.S. at 748. But "impeachment information is special in relation to the *fairness of a trial*, not in respect of whether a plea is *voluntary.*" *Ruiz*, 536 U.S. at 629 (emphasis original). Moreover, "it is particularly difficult to characterize impeachment

4

information as critical information of which the defendant must always be aware prior to pleading guilty." *Id*. at 630.

The Constitution does not require that the defendant have "complete knowledge of the relevant circumstances" in order to make a guilty plea voluntary. *Id*. In *Brady v. United States*, the Supreme Court stated:

> We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought.

*Id*. at 757. The defendant need only understand the nature of his right and how it "would likely apply *in general* in the circumstances." *Ruiz*, 536 U.S. at 629 (emphasis original). The district court sufficiently informed Wells of his rights and the possible consequences of a guilty plea at the plea hearing. It is immaterial to the validity of Wells's guilty plea that because Wells could have impeached one of the Government's principal witnesses, the Government may have had a weaker case than he anticipated.

Finally, we reiterate that Wells has never denied his guilt. He has never proclaimed his innocence, and he has never asked to withdraw his guilty plea. Rather, he now claims that the impeachment information "eviscerates 50% of the government's case," and therefore requires the dismissal of the indictment. Manifestly, information that eviscerates only 50% of the Government's case leaves intact the remaining 50%, but, that aside, Wells points to no authority supporting his proposition that the Government cannot be permitted to proceed to trial in such a weakened condition. And Wells's argument merely proves the Court's point in *Ruiz*: "a constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea,

5

could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice." *Id.* at 631.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.