UNITED STATES, Appellant,

v.

Stanley C. WAGONER, Appellee.

No. 7192.

District of Columbia Court of Appeals,

Argued March 3, 1974.

Decided June 7, 1974.

John A. Terry and Lee Cross, Asst. U. S. Attys., for appellant.

William W. Taylor, III, Washington, D. C., appointed by this court, with whom Robert M. Weinberg, Washington, D. C., was on the petition for appellee.

Before REILLY, Chief Judge, and KELLY, FICKLING, KERN, GAL-LAGHER, NEBEKER, PAIR * (Retired), YEAGLEY and HARRIS, Associate Judges.

ORDER

PER CURIAM.

On consideration of appellee's petition for rehearing *en banc* and a majority of the active judges not being in favor of granting said petition, it is

Ordered that appellee's aforesaid petition is denied.

GALLAGHER, Associate Judge, with whom FICKLING, KERN and PAIR, Associate Judges, join, dissenting:

We would grant the petition for rehearing *en banc* because we think the opinion

* Associate Judge Pair prior to his retirement voted to grant appellee's petition.

1. United States v. Wagoner, D.C.App., 313 A. 2d 719 (1974).

2. D.C.Code 1973, § 22-2801:
   Whoever has carnal knowledge of a female forcibly and against her will or whoever

of the hearing division in this case[1] derogates the function of the grand jury system and thereby reaches deeply into the administration of criminal justice in this jurisdiction.

What happened here was that an indictment was returned on a charge carrying up to life imprisonment (rape)[2] without so much as a single live witness being presented by the government to the indicting grand jury, even though the government concedes that its witnesses, including the complainant, were available. The government had previously obtained an indictment in the United States District Court against the defendant on a charge of carnal knowledge. For reasons not pertinent, that indictment was dismissed. Later, upon the transfer of jurisdiction to the newly created Superior Court, the indicting grand jury in this case had read to it by the prosecuting attorney the testimony as presented before the prior grand jury. The transcript of the grand jury proceedings here (Appendix A, attached) simply contains the information that such prior testimony was read, off the record, to this grand jury. An indictment for forcible rape was then returned.

The defendant filed a motion to dismiss the indictment on the ground that the indictment was procured by the government without the independent consideration of the grand jury. After oral argument, the trial court granted the motion and, having filed a memorandum opinion, ordered the indictment dismissed. The government appealed and, as stated, this court reversed and now by a divided vote the full court denies the petition for rehearing *en banc*.

We think the procuring of an indictment on a charge carrying up to life imprison-

carnally knows and abuses a female child under sixteen years of age, shall be imprisoned for not more than thirty years.
The defendant was also indicted at the same time for taking indecent liberties with a minor. D.C.Code 1973, § 22-3501(a).

ment without presenting a single live witness to the grand jury is demeaning of the grand jury function and should not be ratified, especially where, as here, witnesses were concededly readily available for presentation to the grand jury. This case does not, for us, present a realistic question on competency or adequacy of evidence presented to a grand jury as in Costello v. United States, 350 U.S. 359, 76 S. Ct. 406, 100 L.Ed. 397 (1956). Our problem goes deeper than that. Our problem goes fundamentally to the derogation of the grand jury system. There could have been only one reason for the procedure followed—it was more convenient. But surely that is not enough.

In this country, from the popular character of our institutions, there has seldom been any contest between the government and the citizen which required the existence of the grand jury as a protection against oppressive action of the government. Yet the institution was adopted in this country, and is continued from considerations similar to those which give to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity. No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body, consisting of not less than sixteen nor more than twenty-three good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial. [Ex parte Bain, 121 U.S. 1, 11, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887) quoting Mr. Justice Field in his charge to a grand jury.]

*    *    *    *    *    *

The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. . . . [Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (footnote omitted).]

*    *    *    *    *    *

[T]he most valuable function of the grand jury [is] not only to examine into the commission of crimes, but to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony or was dictated by malice or personal ill will. [Hale v. Henkel, 201 U.S. 43, 59, 26 S.Ct. 370, 373, 50 L.Ed. 652 (1906).]

*    *    *    *    *    *

The constitutional requirement of an indictment or presentment as a predicate to a prosecution for capital or infamous crimes has for its primary purpose the protection of the individual from jeopardy except on a finding of probable cause by a group of his fellow citizens, and is designed to afford a safeguard against oppressive actions of the prosecutor or a court. The constitutional provision is not to be read as conferring on or preserving to the grand jury, as such, any rights or prerogatives. The constitutional provision is, as has been said, for the benefit of the accused. [United States v. Cox, 342 F.2d 167, 170 (5th Cir.) (en banc), cert. denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965) (footnote omitted).]

There was no opportunity here for a grand juror to ask so much as a single question of a witness on this grave charge. It does not matter that a prior grand jury may have had this opportunity. It is what happens before the indicting grand jury that should concern us. Plainly it is not to be considered as merely a "rubber stamp" for the action of a prior grand jury,

which, incidentally, indicted for carnal knowledge not rape.

We realize prosecutors are under heavy stress in this crime ridden society. But, as in all times of stress, it is then the particular duty of the courts to provide stability so the fabric of our society will be preserved notwithstanding the strains. The procuring of this indictment with no witness appearing before the indicting grand jury is not what this country stands for—at least not from where we sit. Where might it lead in this increasingly impersonal, mechanized age?

Since the government appealed from the dismissal of the indictment we can only assume it wished to obtain explicit judicial approval of this practice under similar circumstances for the future. While this court has now given this approval, we must express the hope that the government will consider whether, purely as a matter of policy, it is prudent to continue the procedure. It would have been a simple matter to present the evidence before the grand jury in what we always thought was the traditional fashion—through one or more live witnesses, who would be open to questions and could be seen and heard. This opportunity was not present here.

We consider that the judgment reached by the trial judge was correct. Because of the importance of the issue to the administration of criminal justice, we think the petition for rehearing *en banc* should have been granted. It would not have set the defendant free but simply would have afforded full-blown consideration by the entire court on (a) whether the practice should be disapproved and (b) whether there should be a re-presentation to the grand jury in traditional fashion. We dissent from the denial of the petition.

### APPENDIX A

The complete transcript of the indicting Grand Jury's proceeding in this case follows:

[Assistant U. S. Attorney]: For the record, this is the case of United States vs Stanley Compos Wagoner, which was Criminal Case No. 55246-72, in the United States District Court. It is presented to this Grand Jury as [an] original indictment case for consideration for indictment.

The testimony was taken in Grand Jury No. 2 in the United States District Courthouse at 3rd and Constitution Avenue, Northwest in the District of Columbia on Wednesday, February 9, 1972.

This transcript contains the testimony of [six witnesses]. And it was taken in the presence of a full quorum of Grand Jury before [the] Assistant United States Attorney.

I will now read the transcript of the testimony, and this will be off the record.

(Whereupon, the above captioned transcript read off the record.)

[Assistant U. S. Attorney]: Having reached the juncture in the reading of the transcript of the testimony of [the victim] where [the victim] was asked to identify her statement, and by [the Assistant United States Attorney] in the transcript—correction—having reached the juncture in the transcript where [the victim] was asked to identify her statement of January 30th, 1972, given to the police.

The transcript thereupon indicates that statement was read off the record. I am going to hereby read the statement given on January 30, 1972, by [the victim] at the Metropolitan Police Department.

Off the record.

(Whereupon, statement read off the record.)

[Assistant U. S. Attorney]: Having finished reading the statement of [the

victim], I will now continue to read from the transcript on page 4.

Off the record.

(Whereupon, above captioned transcript read off the record.)

[Assistant U. S. Attorney]: For the purpose of the record, I have completed reading the testimony in the case of United States vs Stanley Compos Wagoner in the offense of alleged rape committed on January 30, 1972, and have read the testimony of [three witnesses] which was presented to the Grand Jury of the United States District Court, on Wednesday February 9, 1972, that being the full testimony presented to the Grand Jury with respect to that offense.

I will note for the record, on page 20 of the transcript taken by the Grand Jury of the United States District Court appears the Certificate of a reporter . . . for the United States Attorney's Office, hereby certify the witnesses whose testimony appears were duly sworn by the Deputy Foreman of the Grand Jury in the presence of a full quorum of that Grand Jury, and testimony of said witnesses, were taken stenographically by me, and thereafter reviewed by me, and transcript is a true and accurate record.

This certificate is signed by [the] Reporter.

[Names omitted.]

Statement by NEBEKER, Associate Judge, with whom REILLY, Chief Judge, and YEAGLEY and HARRIS, Associate Judges, join:

Our dissenting colleagues, in lamenting upon a supposed "derogation" of the grand jury system, react at not having "so much as a single live witness" before that body. At the same time they seem to say, but hopefully would not hold, that "charge[s] carrying up to life imprisonment" are to be viewed differently than lesser infamous crimes [1] when it comes to the nature of evidence to be presented to a grand jury.

What our disagreeing colleagues would find more in keeping with their notion of our national goals is really something quite less in evidentiary value than the evidence presented here. It must be borne in mind that the sworn testimony of the witnesses was read in full to the grand jury. If the minority would require the grand jury to summons a "live witness", or the prosecutor to present one, clearly they would have to settle for having a police officer testify as to his "hearsay" knowledge of the incident. An indictment returned on that kind of testimony is obviously acceptable. Costello v. United States, 350 U.S. 359, 76 S. Ct. 406, 100 L.Ed. 397 (1956). It is difficult to see how such a requirement would enhance our grand jury system. Moreover, it means nothing to observe that the "witnesses were concededly readily available for presentation to the grand jury", for it is clearly beyond the power of a court to require, by dismissing an indictment, that certain witnesses must testify in support of it. See United States v. Calandra, 414 U. S. 338, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); Costello v. United States, *supra.* See also United States v. Dionisio, 410 U. S. 1, 15, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

1. U.S.Const. Amend. V.