UNITED STATES OF AMERICA,     )     CR. NO. 88-00003
                              )
        Plaintiff,            )
                              )
    v.                        )     DECISION AND ORDER
                              )
JESUS PANGELINAN MAFNAS,      )
                              )
        Defendant.            )
_____)

THESE MATTERS came before the Court on May 26, 1988, for hearing of the remaining pre-trial motions, filed by both parties on May 23, 1988.

After considering the memoranda and arguments of counsel, the Court makes the following decisions:

## Plaintiff's Motion for Reciprocal Discovery

The United States, pursuant to Rules 16(b)(1), subsections (A) and (B), and 26.2 of the Federal Rules of Criminal Procedure, asks that defendant be required to permit plaintiff to inspect, copy, or photograph books, papers, documents, photographs, tangible documents or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at trial. Plaintiff asks also that it be permitted to inspect and copy or photograph any results or

**422**

reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to his testimony.

Rule 16(b)(1), (A) and (B), provides for reciprocal discovery of such material if defendant has first made the same request upon the plaintiff and plaintiff has complied. The record before the Court reveals that defendant has made such request of plaintiff and, upon plaintiff's representation of compliance, this portion of the motion is GRANTED. The Court orders continuing reciprocal discovery during the trial.

Plaintiff also requests, pursuant to Federal Rule of Criminal Procedure 26.2, that after each witness called by defendant, other than defendant himself, has testified on direct examination, that defendant or his attorney, as the case may be, produce, for the examination and use of plaintiff, any statement of the witness that is in defendant's possession and that relates to the subject matter concerning which the witness has testified.

Because plaintiff's motion is based upon and complies with the provisions of Rule 26.2, it is GRANTED. The procedure outlined in the rule shall be followed at trial.

Plaintiff's Motion for Exclusion of Witnesses

Plaintiff moves, pursuant to Federal Rule of Evidence 615, that all witnesses, except Special Agents Tom Ernst and Richard Morris, be excluded from the trial except during their testimony, so that they cannot hear the testimony of other witnesses.

Generally, this is a routine motion, routinely granted. Here, however, plaintiff states that the two special agents are officers or employees of the United States and are designated as representatives of the United States, as provided in sub-part (2) of the rule. Further, plaintiff argues that because of the complexity of the case and the fact that primary responsibility for investigation shifted to Morris after Ernst was re-assigned to another office, their presence at counsel table is essential to the presentation of plaintiff's case, which would also bring the request within sub-part (3) of the rule.

The Notes of the Advisory Committee on Proposed Rules state in part:

> The efficacy of excluding or sequestering witnesses has long been recognized as a means of discouraging and exposing fabrication, inaccuracy, and collusion. (Citation omitted). The authority of the judge is admitted, the only question being whether the matter is committed to his discretion or one of right. The rule takes the latter position. * * *
>
> Several categories of persons are excepted. * * *. (2) As the equivalent of the right of a natural-person party to be present, a party which is not a natural person is entitled to have a representative present. Most of the cases have involved

allowing a police officer who has been in charge of an investigation to remain in court despite the fact that he will be a witness. (Citations omitted).   *   *   *   (3) The category contemplates such persons as an agent who handled the transaction being litigated....

Further, the Notes of Committee on the Judiciary, Senate Report No. 93-1277, provide:

Many district courts permit government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness. The practice is permitted as an exception to the rule of exclusion and compares with the situation defense counsel finds himself in--- he always has the client with him to consult during the trial. The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter. The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty. Yet, it would not seem the Government could often meet the burden under rule 615 of showing that the agent's presence is essential.   *   *   *

The problem is solved if it is clear that the investigative agents are within the group specified under the second exception made in the rule, for "an officer or employee of a party which is not a natural person designated as its representative by its attorney." It is our understanding that this was the intention of the House committee. It is certainly this committee's construction of the rule.

The Court adopts the approach suggested and endorsed by these Committees.

As to the issue of allowing both men to join plaintiff's counsel at counsel table, the Court relies on

425

Breneman v. Kennecott Corp., 799 F.2d 470, 474 (9th Cir. 1986), and the cases cited therein, which acknowledge the Court's wide discretion in deciding the matter. The Court, based upon the record before it, will allow both agents to sit at counsel table.

This motion is GRANTED.

## Stipulations

The Court recognizes that neither party can be required to stipulate to any item of evidence. However, in the interest of perhaps expediting the trial, and pursuant to Local Rule 325, subsections (d) and (k), the Court met with both parties in chambers to discuss the possibility of stipulations. The parties represented that they were attempting to agree upon certain stipulations and the Court agreed that they should continue on this course.

## Plaintiff's Motion to Summon Additional Prospective Jurors

The Court sua sponte has determined that it is advisable to summon additional jurors. Both parties concur and it is so ordered.

## Defendant's Motion to Dismiss - Qualifications of Certain Grand Jurors

Defendant has moved to disqualify a number of grand jurors due to ambiguities in their juror questionnaires which might call into question their status as United States citizens

or possible exemption from grand jury service.

Federal Rule of Criminal Procedure 6(b)(2) provides that a motion to dismiss an indictment may be based on the lack of the legal qualifications of one or more individual grand jurors. Such challenges are to be made in the manner provided by 28 U.S.C. §1867(e). Section 1867(e) states that the procedures prescribed by §1867 shall be the exclusive means by which a person accused of a federal crime may challenge a juror on the ground he or she was not selected in conformity with the provisions of Title 28.

Section 1867(a) provides that in a criminal case, either "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment...on the ground of substantial failure to comply with the provisions of this title in selecting the Grand... Jury." (Emphasis added).

The record in this case reveals that the indictment against defendant was returned March 16, 1988. Defendant's counsel appeared of record on March 25, 1988, when he accompanied defendant to the arraignment and entry of plea.

The first inkling that defendant might question the composition of the grand jury on the qualifications of the grand jurors appears in a motion filed by defendant on May 4, 1988. There is no indication in the record that any attempt to study the grand jurors' questionnaires was made between March 25, 1988,

**427**

and May 4, 1988. In fact, it was only in open court on May 19, 1988, that such a request was actually made.

The information upon which defendant's challenge is based appears on the face of the juror questionnaires. Such questionnaires are and have been available for inspection (28 U.S.C. §1868) to any person ever since they were returned, prior to the selection and convening of the grand jury in mid-December of 1987. And, they were similarly available to defendant prior to May 4, 1988.

The Court finds that, at least since March 25, 1988, defendant could have discovered, by the exercise of diligence, the grounds supporting the motion. Defendant then had seven days to file his motion. He did not. The motion is deemed waived and is, therefore, DENIED.

However, the Court notes that defendant's motion would have failed in any case. As stated earlier, defendant questioned the legal qualifications of certain jurors, whose answers on their questionnaires raised the issue of their U.S. citizenship or the possibility they should have been exempt from service.

Title 28 U.S.C. §1865(a) allows this Court to enquire whether a person is unqualified to be a juror. Section 1867(b) requires that a grand juror, among other things, be a United States citizen. On May 25, 1988, the Court submitted to six of those grand jurors challenged on citizenship grounds (two were not available due to illness) a questionnaire requiring them to state, under penalty of perjury, if they were citizens of the

**428**

United States. All six answered in the affirmative.[1] Defense counsel also challenged five grand jurors as being exempt from service, pursuant to 28 U.S.C. §1863(b)(6)(ii) and (iii). The Court has examined the challenged questionnaires and finds that Juan Tenorio is a public official directly appointed by a person elected to office (the Governor) and Edward S. Hocog is a member of a governmental police department. Both are and should have been exempt from service. Serafin P. Tudela, employed as a revenue officer by the Department of Revenue and Taxation; Shirley K. Olopai, employed as a secretary by the Division of Customs; and Larry Hofschneider, employed as a messenger by the Attorney General's office, do not fall within the exemptions set out in 28 U.S.C. §1863(b)(6).

Accordingly, based upon the exemptions of Tenorio and Hocog, and the uncertainty as to the citizenship of the two ill grand jurors who did not fill out the Court's questionnaire on May 25, 1988, there remain nineteen qualified grand jurors. The public record in this case shows that nineteen of the twenty-three grand jurors agreed in the return of the indictment. The law requires that a quorum of at least sixteen grand jurors be present when an indictment is returned.

Furthermore, Federal Rule of Criminal Procedure 6(b)(2)

---

[1] A U.S. citizen or U.S. national may vote in CNMI elections. The questionnaire submitted to the six challenged jurors also asked them to indicate if they were U.S. nationals, rather than U.S. citizens. No one indicated he or she was a U.S. national, rather than a U.S. citizen.

provides that an indictment will not be dismissed, even if one or more grand jurors is found to be disqualified, "if it appears from the record kept...that 12 or more jurors, after deducting the number not legally qualified, concurred in finding the indictment." The qualifications of fifteen jurors were not challenged. Since at least nineteen grand jurors are qualified, and since nineteen concurred in the indictment, clearly, even if the two exempt grand jurors, plus the two absent grand jurors (if presumed, for purposes of this case, to be unqualified) are not included, Rule 12(b)(2) still has been satisfied and the indictment stands. The motion would fail, even if timely filed.

## Defendant's Motion to Dismiss - Violation of the "Secrecy Rule"

Defendant also moved to obtain copies of the grand jury transcript to support his motion to dismiss the indictment on the ground that one or more grand jurors have violated the oath of secrecy imposed upon them by Federal Rule of Criminal Procedure 6(e). This motion was withdrawn in open court, due to defendant's professed inability to locate witnesses. However, the Court makes the following observations:

Initially, the Court notes that defense counsel supported this motion with his affidavit alleging "on information and belief" that certain members of the grand jury breached their oath of secrecy. It is fundamental that an affidavit must be made upon personal knowledge; affiant either does or does not know sufficient facts. There was nothing competent before the

430

Court to support the assertion that one or more jurors violated the oath of secrecy.

Furthermore, even if it were shown that the oath of secrecy had been violated,[2/] the remedy is not dismissal of the indictment but, rather, a contempt of court proceeding. This is made clear by Rule 6(e)(2). If defendant wishes to lodge contempt proceedings against one or more grand jurors, such a hearing may be held at the conclusion of trial.

During the course of his oral argument, defense counsel shifted the emphasis of his request for a transcript to requiring it for the purpose of determining whether the prosecutor correctly or incorrectly presented to the grand jurors the laws applicable to the facts of the case.

In <u>Costello v. the United States</u>, 350 U.S. 359 (1956), the Supreme Court held that:

> An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The 5th Amendment requires no more. (Footnote omitted).

Rule 6(e)(3)(c) further provides:

> Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made...(ii) when permitted by a court at the request of the defendant, <u>upon a showing</u> that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. (Emphasis added).

---

[2/] The record contains a copy of the Court's charge to the grand jury and a copy of the handbook given to each grand juror. In addition, the grand jurors viewed an instructional film. The obligation of secrecy was stressed in each.

**431**

The indictment in this case is valid on its face. Without any showing or allegation of impropriety in the conduct of the grand jury proceeding there is nothing to support counsel's attempt to breach the confidentiality to which grand jury proceedings are entitled. The motion for grand jury transcripts is DENIED.

Motion to Dismiss-Lack of Jurisdiction

Defendant has also moved to dismiss the indictment against him based on the fact that the presiding judge of this Court does not possess the attributes of an Article III judge, namely life tenure and irreducible salary.

Congress established the District Court for the Northern Mariana Islands in 48 U.S.C. §1694(a). The judge of the Court is appointed by the President to a ten-year term pursuant to §1694(b). The judge can be removed for cause and his salary, though equivalent to that of a United States district judge, can be reduced during his term.

According to defendant, he will be denied due process if he is tried before a court not established pursuant to Article III and by a judge not possessing the attributes of an Article III judge.

At the outset, the Court notes that defendant's argument citing Covenant Section 501, like defendant's argument in support of his previous motion to dismiss, emphasizes the importance of honoring the language and intent of the Covenant, Section 501 of the Covenant (which section specifically

432

delineates, inter alia, those portions of the United States Constitution which apply in the Commonwealth) does not include Article III. Defendant's argument that the District Court should be staffed by an Article III judge is contrary to the mandates of the Covenant, which defendant has repeatedly asked this Court to honor. The Court does so.

Essentially, defendant's motion raises in issue whether criminal laws passed by Congress may only be prosecuted in courts established pursuant to Article III. This was precisely the issue raised in Palmore v. United States, 411 U.S. 387 (1973). Defendant in Palmore was arrested and charged with carrying an unregistered pistol in the District of Columbia. The Criminal Code of the District of Columbia was promulgated and enacted by the United States Congress since the District of Columbia is a territory of the United States. Palmore was scheduled to be tried in the Superior Court of the District of Columbia. Judges of the Superior Court are in essence federal judges, appointed by the President and confirmed by the Senate. These judges, however, are appointed to 14-year terms, their salaries can be diminished during their tenure, and they are subject to removal for cause. Palmore moved to dismiss the indictment urging that he could only be tried for violating federal criminal laws in an Article III court. The Superior Court, the District of Columbia Court of Appeals, and the United States Supreme Court rejected Palmore's argument. Justice White, speaking for the Court, stated the issue precisely as it has been stated here: Whether

**433**

criminal offenses under the laws passed by Congress may be prosecuted in courts other than those established pursuant to Article III. Palmore, 411 U.S. at 400. The Court found no support for defendant's assertion that such could not be done. Rather, the Court determined that the enforcement of federal law has not been deemed the exclusive province of federal Article III courts. Id. at 402. Justice White concluded:

> [N]either this Court nor Congress has read the Constitution as requiring...every federal criminal prosecution for violating an Act of Congress, to be tried in an Art. III court before a judge enjoying lifetime tenure and protection against salary reduction.

> *        *        *

> [T]he requirements of Art. III...must in proper circumstances give way to accommodate plenary grants of power to Congress to legislate with respect to specialized areas having particularized needs and warranting distinctive treatment. Palmore v. United States, 411 U.S. 387, 408-09 (1973).

This same issue has been raised in a forum nearer to home in United States v. Santos, 623 F.2d 75 (9th Cir. 1980). Defendants in Santos were prosecuted and convicted in the District Court of Guam for committing criminal offenses under 18 U.S.C. §§3 and 242. They subsequently brought a habeas corpus petition seeking to have their sentences vacated "on the ground that the District Court of Guam was without jurisdiction to entertain criminal complaints." Id. at 76. The District Court of Guam and later the Ninth Circuit ruled that the court had jurisdiction. At issue in Santos was 48 U.S.C. §1424, which

**434**

states:

> The District Court of Guam shall have the jurisdiction of a district court of the United States in all causes arising under the Constitution, treaties and laws of the United States, regardless of the sum or value of the matter in controversy....

This is essentially the same language used in 48 U.S.C. §1694(a), which created the District Court for the Northern Mariana Islands, and which is in part the jurisdictional grant of this Court. The Ninth Circuit determined that this statute conferred on the District Court of Guam jurisdiction to hear criminal cases involving violations of federal law. Id. at 76.

For these reasons, this Court holds that the jurisdictional grant of 48 U.S.C. §1694(a) includes criminal prosecutions of federal offenses and, further, that such grant does not violate the United States Constitution nor the Covenant.

IT IS SO ORDERED.

DATED this 27th day of May, 1988.

Alfred Laureta
Judge

435