UNITED STATES of America

v.

Al FELTON, Defendant.

No. S90 Cr. 808 (DNE).

United States District Court,
S.D. New York.

Jan. 17, 1991.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., Michael S. Sommer, David N. Kelley, Helen Gredd, Gerard E. Lynch, Asst. U.S. Attys., of counsel, New York City, for U.S.

Leonard F. Joy, The Legal Aid Society, Federal Defender Service Unit, Barry H. Berke, Roland Thau, of counsel, New York City, for defendant.

## OPINION & ORDER

EDELSTEIN, District Judge:

The defendant, Al Felton, has moved to dismiss the indictment against him on the grounds that the government's presentation to the grand jury was misleading and that the government's reliance on a single hearsay witness is the product of a history of prosecutorial misconduct that is so systematic and pervasive as to undermine the fundamental fairness of the grand jury process. For the following reasons, the defendant's motion is denied.

## I. BACKGROUND

Count one of the initial indictment in this case charged Al Felton and Ramon Campusano with the distribution of, and possession with the intent to distribute, "crack" in violation of 21 U.S.C. § 841(b)(1)(C). Count two of the indictment charged Campusano with carrying and using a firearm in relation to a drug offense in violation of 18 U.S.C. § 924(c). In the government's presentation to the grand jury on November 29, 1990, the prosecutor called Special Agent Cucinelli of the Bureau of Alcohol, Tobacco and Firearms, as the sole witness to testify about the events surrounding the arrest of Felton and Campusano. Agent Cucinelli was the case agent assigned to their arrests. Agent Cucinelli's testimony before the grand jury was based on two phone conversations with Detective Fagan, the undercover officer involved in the arrests of Felton and Campusano, and on the written reports of Detective Fagan and other officers involved in the arrest.

On December 26, 1990, the government filed a superseding indictment against Felton and Campusano which charged that the distribution and possession with intent to distribute charged in count one of the first indictment took place within one thousand feet of a school in violation of 21 U.S.C. §§ 841(b)(1)(C) and 845a(a). Count two of the superseding indictment again charged Campusano with carrying and using a firearm in relation to a drug offense in violation of 18 U.S.C. § 924(c).

On January 7, 1991, Campusano pled guilty to the two counts in the superseding indictment. On January 9, 1991, the first morning of defendant Felton's trial, defendant raised the issue of the prosecutor's misconduct in his November 29, 1990 presentation to the grand jury. At that time, the defendant sought discovery of the grand jury minutes. After an *in camera* review of the grand jury minutes, this Court turned the minutes over to defendant. The next morning, January 10, 1991, as the trial continued, defendant submitted a letter to the Court urging it to dismiss the indictment against the defendant.

Many recorded conferences about the issue ensued. This motion followed. On January 14, 1991, having heard the government's case consisting of the testimony of Detective Fagan and two other officers involved in the arrest of defendant and the defendant's case consisting of the testimony of Agent Cucinelli, the petit jury found Felton guilty beyond a reasonable doubt of the count with which he was charged in the superseding indictment.

## II. DISCUSSION

■ In *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 2374–75, 101 L.Ed.2d 228 (1988), the Supreme Court stated that a court may invoke its supervisory power to dismiss an indictment for a violation by the prosecutor that occurred before the grand jury "if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Id.* at 256, 108 S.Ct. at 2374 (quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986) (O'Connor, J. concurring)). Alternatively, a court may dismiss an indictment if there is "a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment." *Id.* 487 U.S. at 259, 108 S.Ct. at 2376; *see United States v. Brito*, 907 F.2d 392, 394 (2d Cir.1990). The defendant moves to dismiss the indictment under both of these standards. Both the defendant and the government rely on the Second Circuit's recent opinion in *United States v. Brito*, 907 F.2d 392 (2d Cir.1990). Familiarity with this decision will be assumed here.

### A. Violation Before The Grand Jury

■ It is well settled that hearsay is admissible before the grand jury. *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956). A prosecutor's reliance on hearsay may be grounds for dismissal of an indictment if the grand jury was misled or misinformed. *Brito*, 907 F.2d at 394. As has been noted several times in this circuit,

[t]he use of hearsay testimony before the grand jury raises questions about the validity of an indictment only when the prosecutor misleads the grand jury into thinking it is getting first-hand testimony when it is really receiving hearsay, ... or where there is a high probability that if eyewitnesses rather than hearsay testimony had been used, the defendant would not have been indicted.

*United States v. Diaz*, 922 F.2d 998, 1005–06 (2d Cir. December 27, 1990) (quoting *United States v. Dyman*, 739 F.2d 762, 767 (2d Cir.1984), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 969, 83 L.Ed.2d 973 (1985)).

■ In this case, the defendant argues that the prosecutor's presentation of a single hearsay witness before the grand jury when first-hand testimony was readily available resulted in the grand jury being misinformed as to the actual evidence in the case. The defendant argues that this excessive reliance on hearsay, especially given the *Brito* decision, constitutes a violation before the grand jury that "substantially influenced the grand jury's decision to indict," and raised a "grave doubt that the decision to indict was free from the substantial influence" of the violation. *Bank of Nova Scotia*, 487 U.S. at 256, 108 S.Ct. at 2374–75. To bolster this contention, the defendant points out that there were several inconsistencies between Agent Cucinelli's hearsay testimony before the grand jury regarding Felton, which consists of only six lines in the grand jury transcript, and Detective Fagan's testimony concerning Felton at trial.

The government argues that the presentation of hearsay testimony to the grand jury is perfectly appropriate as long as the grand jury is not misled as to the facts of the case or the quality of the proof it is hearing. In this case, the government argues that the prosecutor carefully instructed the grand jury about the nature of the evidence it was hearing. Further, the government argues that the use of first-

hand testimony before the grand jury would not have produced a different result because Agent Cucinelli's testimony before the grand jury is similar in all relevant respects to that presented by Detective Fagan at trial.

The government in this case presented one witness to the grand jury, Agent Robert Cucinelli. Unlike *Brito*, where the agent testifying before the grand jury had "little personal knowledge" of the facts, *Brito*, 907 F.2d at 395, Agent Cucinelli had absolutely no personal knowledge of the events surrounding the defendant's arrest. The sole basis of his knowledge when testifying before the grand jury was two phone conversations with Detective Fagan and the review of reports made by Detective Fagan and other officers involved in the arrest.

This Court repeatedly asked in conferences why the government had relied on the hearsay testimony of one witness before the grand jury when any one of the three officers who were involved in the arrest of the defendant and who were scheduled to testify at trial could have testified. In this case, unlike *Brito*, the government did not argue that the witnesses with personal knowledge were unavailable to testify before the grand jury. Instead, the government argued that Agent Cucinelli could provide a clear picture to the grand jury based on his understanding of the observations of the three arresting officers.

Ironically, in *Brito*, the Second Circuit criticized the government's use of a single hearsay witness before the grand jury for the very reason offered here by the government in support of such a practice. In *Brito*, the Second Circuit criticized the government's policy of using a single hearsay witness before the grand jury because it produces "evidence which appears smooth, well integrated and consistent, making even weak cases appear strong." *Brito*, 907 F.2d at 395 (citation omitted). The Second Circuit further admonished the "casual attitude with respect to the presentation of evidence to a grand jury manifested by the decision ... to rely on testimony of the law enforcement officer who knew

the least, rather than subject the other officers ... to some minor inconvenience." *Id.* (citation omitted).

The government initially sought to distinguish *Brito* from this case by arguing that in *Brito*, the Second Circuit's criticism of the government's conduct was directed at the government's failure to call the case agent before the grand jury. In this case, however, the government pointed out that the case agent, Mr. Cucinelli, did testify. This distinction is meritless because the case agent here had absolutely no personal knowledge of the facts of the case. The important issue is not whether the prosecutor brings the case agent before the grand jury, but whether the officer or agent brought before the grand jury has any personal knowledge of the events to which he will testify.

At oral argument, the government represented that the facts of this case are somewhat unique because the arrest of the defendant was made pursuant to a program instituted by the United States Attorney's Office, the Bureau of Alcohol, Tobacco and Firearms and the New York Police Department which brings cases involving firearms and narcotics to federal court. Hearing Transcript, January 15, 1991, at p. 18. The government represented that pursuant to this program the federal case agents are notified about the facts of a case after an arrest has been made by the New York City Police Department. *Id.* at 19. Thus, unlike the usual narcotics case where the federal case agent will have personal knowledge of the events leading to an arrest, in this particular program the federal case agent will apparently never have personal knowledge of the events leading to an arrest. After describing this program to the Court, the government acknowledged that in cases brought to federal court under this program it would be "preferable to call the undercover officer from the New York Police Department" to testify before the grand jury. *Id.*

My feelings of displeasure about the conduct of the government before the Grand Jury in this case is akin to that expressed in *Brito*. The government most assuredly

could have been more circumspect in the way this case was presented to the grand jury. The government could have, at the very least, produced one fact witness; it chose not to. This raises the question of whether the prosecutor's reliance on a single hearsay witness before the grand jury in this case misled the grand jury in any way so as to prejudice the defendant.

Did the prosecutor deceive the grand jury in any way? Did he mislead the grand jury as to the facts of the case? Did he fail to tell the grand jury that the testimony before it would be hearsay? Did he fail to tell the grand jury that additional witnesses could be brought before it? I find the answers to all these questions to be "no." Of course, standing alone this finding would not necessarily save the indictment. The method and procedure used by the prosecutor before the grand jury is not to my liking. It might even be described as ill advised and imprudent. But, I do not find that the prosecutor misled the grand jury or violated the law in any way.

Despite differences between Agent Cucinelli's testimony before the grand jury and Detective Fagan's testimony at trial, these differences were not material and could not have misled the jury as to the facts of the case. Further, in light of the testimony of Detective Fagan and the other two officers involved in the arrest of the defendant at trial, I see no likelihood that if the grand jury had been presented with their firsthand testimony it would have failed to indict. Accordingly, the prosecutor's presentation to the grand jury did not prejudice the defendant.[1]

### B. History of Prosecutorial Misconduct

■ As an alternative to dismissing the indictment for prosecutorial misconduct that prejudiced the defendant, a court may dismiss an indictment that is the product of "a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial question about the fundamental fairness of the process which resulted in the indictment." *Bank of Nova Scotia*, 487 U.S. at 259, 108 S.Ct. at 2376; *Brito*, 907 F.2d at 394. This standard articulated in *Bank of Nova Scotia* and examined in *Brito*, makes it possible for a court to exercise its supervisory powers to dismiss an indictment for prosecutorial misconduct that does not itself rise to the level of prejudicing the defendant if the court finds that the prosecutor's misconduct was nevertheless part of a history that is so systematic and pervasive as to undermine fundamental fairness. *Brito*, 907 F.2d at 394.

Defendant argues that the prosecutor's use of a single hearsay witness before the grand jury in this case is part of a history of prosecutorial misconduct involving excessive reliance on hearsay that is so systematic and pervasive as to affect the fundamental fairness of the grand jury process. The government argues that there is no history of prosecutorial misconduct, let alone conduct in this case that is part of a practice that is so pervasive and systematic as to undermine fundamental fairness.

It bears repeating that the Framers of the Bill of Rights were not engaging in a mere verbal exercise when they directed in the Fifth Amendment that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentation or indictment of a Grand Jury." U.S. Const. amend. V; *see United States v. Estepa*, 471 F.2d 1132, 1137 (2d Cir.1972). The grand jury historically has "serve[d] the invaluable function in our society of standing between the accuser and the accused." *Brito*, 907 F.2d at 394 (quoting *Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962)). The excessive use of hearsay before the grand jury "tends to destroy the historical

---

1. The defendant also argues that the prosecutor's hearsay warning to the grand jury, his statement to the grand jury regarding the availability of witnesses, and his question to Agent Cucinelli asking him whether he had narrated everything he knew in connection with the investigation constituted violations that substantially influenced the grand jury's decision to indict and raises grave doubts whether the decision to indict was substantially free from such violations. This Court has reviewed the grand jury transcript and finds that the prosecutor's warning, statement and question were not misleading and did not prejudice the defendant.

functions of grand juries in assessing the likelihood of prosecutorial success and tends to destroy the protection from unwarranted prosecutions that grand juries are supposed to afford the innocent." *United States v. Umans*, 368 F.2d 725, 730 (2d Cir.1966), *cert. granted*, 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872, *cert. dismissed as improvidently granted*, 389 U.S. 1025, 88 S.Ct. 583, 19 L.Ed.2d 675 (1967).

In *Brito*, decided on June 29, 1990, the Court of Appeals addressed the issue of whether the government's use of a single witness before the grand jury in narcotics cases constituted a pattern of prosecutorial misconduct. *Id.* at 394. The Court of Appeals stated:

> [A]lthough the single-witness policy provides an efficient means of obtaining indictments in our overcrowded criminal justice system, we must be wary that we do not exalt expedience at the expense of fundamental fairness nor abandon the virtues of the grand jury process to the unreviewed control of the prosecutor.

*Id.* The Court of Appeals determined that, despite the failings of the prosecutor in that case, it could not conclude *"at this time* ... that the single-witness policy constitutes such 'systematic and pervasive' misconduct as would undermine fundamental fairness." *Id.* at 395 (emphasis added).

This raises the question of whether the prosecutor's use of a single witness who relied completely on hearsay in this case can be said *at this time* to be part of such a history of pervasive and systematic misconduct. As recently as June 29, 1990, the Second Circuit said it could not. In the intervening seven months since *Brito* was decided, I do not find a record that demonstrates the use of a single-witness before the grand jury has somehow become so "pervasive" and "systematic" as to undermine the fundamental fairness of the grand jury process. Yet, if the government continues to use a single witness as in this case and *Brito*, the government may be on a collision course with *Brito*. This Court will not condone a government policy whenever it appears that such policy is one designed to subvert the historic function of the grand jury into a rubber stamp for the prosecutor. Nonetheless, for the reasons stated above, this Court is constrained to deny the defendant's motion in all respects.

### III. CONCLUSION

For the reasons stated above, defendant's motion is denied.

SO ORDERED.