**UNITED STATES of America**

v.

**Thomas MULHALL**

**No. CRIM. 3:05CR313(JBA).**

United States District Court,
D. Connecticut.

April 11, 2006.

Anthony E. Kaplan, John A. Marrella, Kevin J. O'Connor, U.S. Attorney's Office, New Haven, CT, for United States of America.

Ioannis A. Kaloidis, Martin J. Minnella, Timothy C. Moynahan, Moynahan Minnella & Tindall, Waterbury, CT, for Thomas Mulhall.

### Ruling on Motion to Dismiss and Motion for Bill of Particulars [Docs. ## 9, 11]

ARTERTON, District Judge.

Defendant Thomas Mulhall moves to dismiss Counts One and Two, alleging mail fraud in violation of 18 U.S.C. § 1341,[1] of the December 13, 2005 indictment against him. See Indictment [Doc. # 1]; Motion to Dismiss [Doc. # 11]. Mulhall also moves for a bill of particulars specifying the amount and the use of the checks alleged to have been part of his "scheme and artifice to defraud" the union of which he was president. See Indictment ¶ 11; Motion for Bill of Particulars [Doc. # 9] at 2–3. For the reasons that follow, defendant's motions are denied.

## I. Background

The indictment alleges the following facts. Mulhall was President of the American Federation of State, County, and Municipal Employees ("AFSCME"), Local 1565, which represents employees of the Connecticut Department of Correction. As President, he "did not have authority to borrow funds or grant security interests in union assets without the prior knowledge and consent of the Executive Board and the membership of Local 1565." Indictment ¶ 4. In early February 2005, the Local had approximately $72,000 in a savings account at the Connecticut State Employees' Credit Union ("Credit Union") in Hartford, that under the union constitution was to be used only for the union's benefit. Id. at ¶¶ 3, 5.

Mulhall is alleged to have taken out loans of $35,000 and $30,000 for his own benefit using the union savings account as collateral. He placed the loan proceeds in a checking account linked to the union's savings account. Id. at ¶¶ 7–9. The mail fraud charges center on the Government's allegation that the Credit Union sent an order form for 175 checks for the checking account to a North Carolina company on February 6, 2005, and shortly thereafter

---

1. The statute reads:

    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be [guilty of a crime].
    18 U.S.C. § 1341.

Mulhall received those checks at his Connecticut residence from the company's New Jersey address. *Id.* at ¶¶ 8, 14, 16. The checks bore his name and home address. *Id.* at ¶¶ 14, 16.

## II. Motion to Dismiss Counts One and Two

### A. Standard

"The indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (citations omitted); *accord United States v. Alfonso,* 143 F.3d 772, 776 (2d Cir.1998). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly ... set forth all the elements necessary to constitute the offence intended to be punished." *Hamling,* 418 U.S. at 117, 94 S.Ct. 2887 (quotations omitted).

■ The indictment "must descend to particulars," however, if "the definition of an offence ... includes generic terms." *United States v. Cruikshank,* 92 U.S. 542, 558, 2 Otto 542, 23 L.Ed. 588 (1875) (citation omitted); *accord United States v. Pirro,* 212 F.3d 86, 92–93 (2d Cir.2000).

■ In the absence of a full proffer of the Government's evidence, "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Alfonso,* 143 F.3d at 776–77 (reversing dismissal of an indictment when the district court "looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial" to satisfy an element of the charge); *accord Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (If "valid on its face," a grand jury indictment "is enough to call for trial of the charge on the merits.") (citations and footnote omitted).

### B. Discussion

■ Mulhall argues that Counts One and Two of the indictment are facially insufficient because the mailing of the check order form and the checks were not "in furtherance" of the alleged fraud. Specifically, he argues that the alleged scheme was complete after he took out the loans and opened the checking account, and receipt of the checks was not necessary to the scheme. He further argues that he did not send the check order form, and had no knowledge that the Credit Union did so.

These arguments provide insufficient grounds to dismiss the indictment in this case.

A mail fraud conviction under 18 U.S.C. § 1341 requires proof that there was (1) a scheme to defraud (2) furthered by use of the mails (3) for the purpose of obtaining money or property.... To meet prong (2) the government must show that the defendant caused the mailing and that it was in furtherance of a fraudulent scheme.

[The Second Circuit has] construed § 1341's causation requirement liberally. In order to show that the defendant caused the mailing, it need only be shown that he acted with knowledge that the use of the mails will follow in the ordinary course of business, or that such use can reasonably be foreseen, even though not actually intended. Moreover, a mailing is in furtherance of a fraudulent scheme when it is incidental

to an essential part of the scheme, or a step in the plot. *A fact-specific inquiry must be made to determine intent, that is to say, whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time.* United States v. Tocco, 135 F.3d 116, 124 (2d Cir.1998) (internal citations, alterations and quotation marks omitted) (emphasis supplied).

Because a determination under the second element of the mail fraud statute—that defendant's scheme was furthered by use of the mails—is fact-specific and cannot be determined from the indictment as a matter of law, Mulhall's arguments are premature. The cases he cites, including *Kann v. United States*, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944), *Parr v. United States*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), and *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), were all decided after a full jury trial. These cases illustrate that the question of whether the mailing of the checks in fact furthered his alleged scheme to defraud is "properly answered only after the Government's proof has been adduced." *United States v. Ganim*, 225 F.Supp.2d 145, 160 (D.Conn.2002).

The Government represents that it intends to prove that access to the money obtained from the loans was integral to defendant's scheme because, without the ability to write checks from the loan funds, defendant would not have been able to benefit personally from the loans. If the Government meets its burden of proof on this score, it will establish a mail fraud violation because "[i]t is sufficient for the mailing to be incident to an essential part of the scheme, or a step in the plot." *Schmuck v. U.S.*, 489 U.S. 705, 710–11, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (internal quotation marks and citations omitted). While a mail fraud conviction cannot be upheld if the mailing is merely post-fraud conduct such as "accounting among the potential victims of the ... schem[e]," *e.g.,* a statement from a bank to the owner of a stolen credit card, *id.* at 714, 109 S.Ct. 1443, here the Government alleges that defendant directly benefited from receipt of the mailed checks and could not have perpetuated the fraud without the checks by which to withdraw the loan money from the checking account.

Defendant's argument that he also could have obtained money from the checking account via an ATM or in-person withdrawal is irrelevant. That he could have committed the same crime in a different manner has no bearing on whether the Government will be able to prove that he in fact committed the crime by means of writing checks on a line of credit that he established with the intent to defraud the union of approximately $65,000, and that he obtained those checks through the United States mail based on an application sent via United Parcel Service.

Finally, defendant's argument that he did not personally mail the check order form, and was unaware that the Credit Union would do so, is unavailing at this stage of the case. To show that Mulhall "caused" the mailing of the application, the Government need only establish that he "acted 'with knowledge that the use of the mails will follow in the ordinary course of business,' or that 'such use can reasonably be foreseen, even though not actually intended.'" *Tocco*, 135 F.3d at 124 (quoting *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954)). It would be reasonable for a jury to infer that when he opened a checking account (as opposed to a savings or any other type of account), Mulhall intended to obtain checks to withdraw money from that account, and that it was reasonably foreseeable that the bank would request, and the printer would provide, those

checks by mail. This issue must await the Government's proof at trial. *See Alfonso,* 143 F.3d at 776–77 ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the ... element[s] of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.").

## III. Motion for Bill of Particulars

Defendant seeks, by way of a bill of particulars, information concerning:

1. [S]pecifically how many check drafts were issued by the defendant for the purpose of depleting the union checking account as alleged in paragraph 11 of the indictment.

2. [S]pecifically the amount of each check draft used to deplete the checking account...

3. [S]pecifically how the defendant benefit[t]ed by the use of the check drafts ...

4. [S]pecifically how the defendant used the check drafts ...

5. [S]pecifically who the check drafts ... were issued to.

Def. Mot. for Bill of Particulars at 2–3. The Government opposes the motion.

### A. Standard

■ Federal Rule of Criminal Procedure 7(f) provides: "The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires." The decision to grant a bill of particulars lies within the discretion of the trial court. *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars ... is intended to give the defendant enough information about the charge so that he or she may adequately prepare a defense and so that surprise may be avoided. It is not intended, as such, as a means of learning the government's evidence and theories." *Ganim,* 225 F.Supp.2d at 156 (quoting Wright, *Federal Practice and Procedure: Criminal 3d* § 129 at 659–60). "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky,* 820 F.2d at 574. Thus, the Second Circuit held in *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984), that where "[t]he elements of the mail fraud scheme [were] described in detail in the indictment" and "[e]ach mail fraud count spell[ed] out the conduct of the defendants in furtherance of the scheme," and where the defendants were provided "additional pertinent documents" in discovery, it was not error to deny a bill of particulars.

### B. Discussion

■ Where the Government refuses to provide pertinent evidence in discovery, a bill of particulars may be warranted. *See Ganim,* 225 F.Supp.2d at 156. Here, however, the Government represents that it has made "all of the documentary evidence in the case available ... for defense counsel's review." Government's Consolidated Response [Doc. # 16] at 14. Accordingly, a bill of particulars is not in order at this time. Furthermore, the detailed evidence sought by defendant goes beyond what is reasonably necessary for Mulhall to be informed of the charges against him and to prepare a defense because the indictment already alleges in detail the scheme to defraud, including the amounts of the loans, their dates, the bank, the account numbers, and the false statements defendant assertedly made to obtain the loans (that the union wanted to establish credit and purchase a building).

## IV. Conclusion

For these reasons, defendant's motion for a bill of particulars [Doc. # 9] and motion to dismiss counts one and two of the indictment [Doc. # 11] are DENIED.

IT IS SO ORDERED.