**UNITED STATES of America**

v.

**Anthony D. AUTORINO, Defendant.**

**No. 3:03CR3 (EBB).**

United States District Court,
D. Connecticut.

May 7, 2003.

---

Edgardo Ramos, Michael G. Considine, Stanley A. Twardy, Jr., Day, Berry & Howard, Stamford, CT, John B. Nolan, Day, Berry & Howard, Hartford, CT, for Defendant.

John H. Durham, Leonard C. Boyle, U.S. Attorney's Office, New Haven, CT, Thomas V. Daily, U.S. Attorney's Office, Hartford, CT, for Plaintiff.

## RULING ON MOTION TO DISMISS

ELLEN BREE BURNS, Senior District Judge.

On January 8, 2003, a federal grand jury returned a seven-count indictment against Defendant Anthony D. Autorino ("Autorino"). The charges against Autorino arise out of his alleged devising of two schemes to defraud the Federal Deposit Insurance Corporation ("FDIC"). On February 27, 2003, Autorino filed a motion to dismiss the indictment pursuant to Rules 7 and 12 of the Federal Rules of Criminal Procedure. Autorino avers that the indictment must be dismissed in its entirety for failure to state an offense. In the alternative, Autorino moves to dismiss individual counts of the indictment. On April 23, 2003, oral argument was held. For the reasons discussed below, Defendant Autorino's motion [Doc. No. 12] is GRANTED.

## THE INDICTMENT

Autorino was president and part-owner of Shared Technologies, Incorporated ("Shared Technologies") during the period of time relevant to the indictment. In February, 1992, Autorino and the FDIC began negotiations to resolve defaulted loans that were owed by Shared Technologies to the FDIC, and which Autorino had personally guaranteed. At that time, the FDIC was operating in its capacity as receiver of Central Bank, which originally entered into the loan agreements with Shared Technologies.[1] As part of the negotiated resolution of the defaulted loans, on or about September 25, 1992, Autorino executed a promissory note to the FDIC for $675,000, which he secured by pledging and delivering 400,000 shares of common Shared Technologies stock. Autorino pledged and delivered the collateral in the form of a Shared Technologies stock certificate, number 1315 ("certificate 1315").

In July, 1993, unbeknownst to the FDIC, Autorino is alleged to have falsely reported to the stock transfer agent that he lost certificate 1315 and that it had not been pledged to any third party. According to the indictment, as a result of Autorino's actions, certificate 1315 was "cancelled" and a replacement certificate was issued.

On or about March 12, 1998, Autorino sold all of his outstanding shares of stock in Shared Technologies to Moonlight Acquisition Corporation.

In approximately June, 1999, upon Autorino's failure to repay the $675,000 promissory note, the FDIC discovered that Autorino had "cancelled" certificate 1315. According to the indictment, the "cancellation" of certificate 1315 "depriv[ed] the FDIC of the value of the Shared Technologies stock represented by that certificate . . . ." Counts One through Five of the Indictment relate to the foregoing events involving certificate 1315. Counts One through Three charge wire fraud, in violation of 18 U.S.C. § 1343, each alleging a separate wire communication in furtherance of Autorino's overall scheme to defraud the FDIC of its rights to certificate 1315. Count Four charges bank fraud, in violation of 18 U.S.C. § 1344, alleging that Autorino defrauded the FDIC as it acted in the capacity of receiver for Central Bank, a federally-insured financial institution. Count Five charges misleading the FDIC, in violation of 18 U.S.C. § 1007, on those same alleged facts.

---

1. As explained in the indictment, Shared Technologies is later known as Shared Technologies Fairchild. For the purposes of this ruling, the Court will simply refer to the corporation as Shared Technologies.

The indictment also alleges that on or about November 1, 1995, the FDIC, as receiver of New Bank of New England, and ADS Realty, a partnership in which Autorino was a principal, reached a negotiated settlement of a lawsuit concerning a different set of defaulted loans. On or about July 17, 1996, as part of the stipulated agreement, Autorino pledged 253,000 shares of Shared Technologies stock to the FDIC to secure a $500,000 promissory note. The shares of stock were represented by stock certificate number 0959 ("certificate 0959").

Unbeknownst to the FDIC, Autorino, in July, 1993, had allegedly reported certificate 0959 to be lost. According to the indictment, Autorino's July, 1993 action rendered certificate 0959 "cancelled and rendered valueless" at the time he pledged it to the FDIC in July, 1996.

Count Six charges a separate § 1007 violation for Autorino's misleading the FDIC in relation to certificate 0959. Count Seven charges Autorino with making a false statement to a financial institution, in violation of 18 U.S.C. § 1014, in relation to certificate 0959.

## STANDARD

■■ Under Rule 7(c) of the Federal Rules of Criminal Procedure, an indictment is only required to contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." *Id.* To be legally sufficient, an indictment must adequately charge the elements of an offense, fairly inform the defendant of the charges he must meet, and contain enough detail to permit the defendant to plead double jeopardy in a future prosecution based on the same set of events. *See United States v. Walsh,* 194 F.3d 37, 44 (2d Cir.1999). Indictments are legally sufficient if they do little more than track the statutory language of the offense charged, state the approximate time and place of the alleged crime, and contain some amount of factual particularity to ensure that the prosecution will not fill in the elements of its case with facts other than those considered by the grand jury. *See id.* An indictment must "descend to particulars" only when the definition of an offense includes generic terms. *See United States v. Pirro,* 212 F.3d 86, 93 (2d Cir.2000) (quoting *United States v. Cruikshank,* 92 U.S. 542, 558, 2 Otto 542, 23 L.Ed. 588 (1875)).

■■ The validity of an indictment is tested by its allegations, not by whether the government can prove its case. *See Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Thus, a technically sufficient indictment "is not subject to dismissal on the basis of factual questions, the resolution of which must await trial." *See, e.g., United States v. Alfonso,* 143 F.3d 772, 776–77 (2d Cir. 1998) (holding that district court erred in dismissing indictment based on sufficiency of evidence).

Under Rule 12(b) of the Federal Rules of Criminal Procedure, however, "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." *Id.* "The general issue in a criminal trial is, of course, whether the defendant is guilty of the offense charged." *United States v. Doe,* 63 F.3d 121, 125 (2d Cir.1995).

■■ For these reasons, when the Court considers a motion to dismiss an indictment, it must not conflate or confuse permissible claims based on sufficiency of the government's allegations with impermissible claims based on sufficiency of the government's evidence. " '[I]t would run counter to the whole history of the grand jury institution' to permit an indictment to be challenged 'on the ground that there was inadequate or incompetent evidence

before the grand jury.'" *United States v. Williams,* 504 U.S. 36, 54, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (quoting *Costello,* 350 U.S. at 363–64, 76 S.Ct. 406).

## DISCUSSION

■ Autorino's main contention is that the allegations set forth in the indictment fail, as a matter of law, to support the crimes charged. Each count of the indictment relies, in whole or in part, on the government's claim that Autorino "cancelled" certificates 0959 and 1315, and thereby rendered them "valueless" to the FDIC. The crux of Autorino's argument is that the protections afforded to the FDIC under the Uniform Commercial Code ("UCC") are such that, as a matter of law, it was impossible to "cancel" and render "valueless" the certificates in question vis-a-vis the interests of the FDIC.

### A. The Uniform Commercial Code

In making his argument, Autorino relies on the language of the Delaware UCC, noting that Shared Technologies was a Delaware corporation. Looking at only the four-corners of the indictment, however, it is not obvious that the Delaware UCC should apply in this case. Although it is uncertain which jurisdiction's version of the UCC applies, what is known is that the UCC, as a general matter, does apply here.

The UCC is a uniform law that governs commercial transactions, including secured transactions and negotiable instruments. The alleged transactions between the FDIC and Autorino involved secured transactions (i.e., giving collateral to guarantee payment of an obligation) as well as

negotiable instruments (e.g., promissory notes). Because the UCC has been adopted in some form by every state, and because the provisions of the UCC that are relevant to the question presented here are substantively similar notwithstanding their jurisdictional origin, the Court will rely on the language from the model provisions of the UCC.[2]

According to the UCC, "[a] 'bona fide purchaser' is a purchaser for value in good faith and without notice of any adverse claim ... who takes delivery of a certificated security in bearer form or in registered form, issued or indorsed to him or in blank." UCC § 8–302. It is clear that the FDIC is entitled to status as a bona fide purchaser of both certificates 1315 and 0959. As alleged in the indictment, the FDIC conferred value for those certificates in the form of two separate loans. In attempting to work out two negotiated settlements, the FDIC was presumptively acting in good faith. Moreover, as described in the indictment, the FDIC appears to have taken delivery without notice of any adverse claim.

Similarly, the Court acknowledges that the FDIC is also entitled to status as a holder in due course. According to the UCC, a holder in due course is "a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." U.C.C. § 8–302. As detailed by the allegations set forth in the indictment, all of the qualities of a holder in due course apply here.

---

**2.** As noted by Autorino in his brief, the model provisions of Article 8 of the UCC were revised in 1994. The revisions did not, however, modify the legal effect of the provisions relevant to the Court's ruling here. Because the transactions in question here occurred at different times between 1992 and 1996, and because many jurisdictions did not officially adopt said revisions of Article 8 until after 1996 (for example, Connecticut did not adopt the revisions until 1997; Delaware not until 1998), the Court will refer to the pre–1994 Article 8 language from the UCC.

The Court recognizes that the UCC provides for a number of defenses to the holder in due course doctrine that could defeat the FDIC's status as a holder in due course.[3] However, assuming every allegation set forth in the indictment to be true, none of the enumerated defenses apply.

The Court is well-aware of the limitations placed upon its pre-trial consideration of certain questions raised in a motion to dismiss an indictment. *See, e.g., Alfonso,* 143 F.3d at 777 (noting that, as with a Hobbs Act prosecution, when a question of federal subject matter jurisdiction is intermeshed with questions going to the merits, the issue should be determined at trial); *see also United States v. Nukida,* 8 F.3d 665, 669 (9th Cir.1993) ("Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not invade the province of the ultimate finder of fact.") (internal quotation and citation omitted).

The Court does not believe that finding the FDIC to be a bona fide purchaser and holder in due course is an act by this Court which "invade[s] the province of the ultimate finder of fact" because the indictment itself provides the requisite information upon which the Court can make such a preliminary finding. Indeed, the thrust of the indictment describes a scenario in which an innocent party (the FDIC) negotiates and purchases for value in good faith

from another (Autorino) in an attempt to settle defaulted loans.

In light of the applicability of the UCC, as well as the FDIC's status as both a bona fide purchaser and holder in due course, the Court now assesses the counts charged in the indictment.

## B. *Counts 1–3: Wire Fraud*

■ The elements of wire fraud are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires. *See United States v. Autuori,* 212 F.3d 105, 115 (2d Cir.2000). As alleged in the indictment, the "scheme and artifice" to defraud was as follows:

> Beginning about July 1993 and continuing through about March 1998, in the District of Connecticut, the defendant ANTHONY D. AUTORINO intended to devise and did devise a scheme and artifice to defraud the FDIC, as receiver of Central Bank, of money and property, that being the value of the 400,000 shares of Shared Technologies common stock reflected in certificate number 1315, originally pledged to the FDIC on September 25, 1992, by cancelling stock certificate 1315 on July 26, 1993, and by thereafter concealing the cancellation of that certificate from the FDIC.

Indictment, Counts 1–3, ¶ 14. Thus, the gravamen of the wire fraud counts is that Autorino caused certificate 1315 to be "cancelled" and rendered "valueless."

---

**3.** The rights of a holder in due course (and defenses thereto) are as follows:

> To the extent that a holder is a holder in due course he takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt except
> (a) infancy, to the extent that it is a defense to a simple contract; and (b) such other incapacity, or duress, or illegality of the

transaction, as renders the obligation of the party a nullity; and (c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and (d) discharge in insolvency proceedings; and (e) any other discharge of which the holder has notice when he takes the instrument.
> U.C.C. § 3–305.

■ Autorino contends that an examination of certain provisions of the UCC establish, as a matter of law, that the acts alleged could not have resulted in the cancellation or devaluation of certificate 1315. The Court agrees. Section 8–405 of the UCC, which specifies what shall occur in the event of "lost, destroyed and stolen securities," speaks directly to this issue. First, under § 8–405(2):

> If the owner of a certificated security claims that the security has been lost, destroyed or wrongfully taken, the issuer shall issue a new certificated security or, at the option of the issuer, an equivalent uncertificated security in place of the original security if the owner ... [s]o requests before the issuer has notice that the security has been acquired by a bona fide purchaser.

*Id.* Second, under § 8–405(3):

> If, after the issue of a new ... security, a bona fide purchaser of the original ... security presents it for registration of transfer, the issuer shall register the transfer unless registration would result in overissue.

*Id.* In other words, as it applies to the facts alleged, if Autorino claimed that certificate 1315 was lost, and the issuer had no notice that certificate 1315 was acquired by the FDIC as a bona fide purchaser, the issuer must ("shall") issue a new certificated security.

■ Furthermore, the UCC provides that the issuer must register the old certificate (here, certificate 1315) when a bona fide purchaser (the FDIC) presents it, absent an "overissue."[4] The issuer—not the bona fide purchaser—is then left to recover its loss from the original registrant (Autorino). In short, the risk of loss is put on the issuer.

Thus, as a result of the protections afforded a bona fide purchaser and holder in due course, the FDIC's interest in "the value of the 400,000 shares of Shared Technologies common stock reflected in certificate number 1315" was protected against being "cancelled"[5] and/or rendered "valueless."[6] At any time, the FDIC could have redeemed or cashed in certificate 1315 for value. Therefore, this allegation is deficient as a matter of law because certificate 1315's value was not and could not be lost to the FDIC.

■ While it is true that the wire fraud statute does not require actual loss or harm, *see United States v. Starr,* 816 F.2d 94, 98 (2d Cir.1987) (holding that government is not required to prove that an intended victim was actually defrauded to establish a violation of wire fraud statute), it is clear there must be some harm contemplated to the victim of the fraud that goes to the nature of the bargain itself. In other words, as it applies here, the

---

**4.** The possibility of an "overissue" (i.e., the issue of securities in excess of the amount the issuer has corporate power to issue) does not change the fact that the full value of certificate 1315 was, at all times, protected vis-a-vis the FDIC. In the event of an "overissue," a bona fide purchaser may recover from the issuer the price he or the last purchaser for value paid for the security, with interest from the date of his demand. *See* UCC § 8–104. Thus, whether in the form of securities or cash, the value of certificate 1315 was always secure.

**5.** "Cancel" is defined as "[t]o destroy a written instrument by defacing or obliterating it," or "[t]o terminate a promise, obligation or right." BLACK'S LAW DICTIONARY 197 (7th ed.1999). "Cancellation" is defined as "[t]he act of defacing or obliterating a writing (as by marking lines across it), thereby rendering it void," or "[a]n annulment or termination of a promise or an obligation." *Id.*

**6.** "Value" is defined as "[t]he monetary worth or price of something; the amount of goods, services, or money that something will command in an exchange." BLACK'S LAW DICTIONARY 1549 (7th ed.1999).

FDIC is victimized by Autorino's fraud only if it does not get what it bargained for. *See, e.g., id.* at 99 (finding no fraud because "there was no discrepancy between benefits reasonably anticipated and actual benefits received") (internal quotation omitted); *United States v. Regent Office Supply Co.,* 421 F.2d 1174, 1182 (2d Cir.1970) (no fraud when misrepresentations did not "affect[ ] the customer's understanding of the bargain nor . . . influenc[e] his assessment of the value of the bargain to him"). Because the FDIC, as holder in due course of certificate 1315, was legally protected in receiving the value of the certificate for which it had negotiated, there could be no fraud as alleged.

In its response brief, the Government suggests that even with the protections provided by the UCC, the FDIC "undoubtedly would have been forced to prove, in all likelihood through litigation, that it was in fact a holder in due course and had taken the original certificates for value and without reason to know of the cancellation." *Government's Reponse* at 9 (citation omitted). While it is true that § 8–405 does not preclude "practical adverse consequences," such as litigation costs, *see United States v. Barrett,* 178 F.3d 643 648 n. 3 (2d Cir.1999), the indictment makes no reference to any such potential cost. Rather, as stated, the only loss of value alleged in the indictment is that of certificate 1315.

The Government also argues that although "the [UCC] provides a statutory remedy to a holder in due course who is victimized by fraud[,] . . . [t]hat this remedy was available in no way vitiates the defendant's fraud." *Government's Response* at 9. The Government contends that as a result of Autorino's actions, "the FDIC was deprived of its property right *in that stock,*" *id.* (emphasis in original), and that no statutory remedy could "re-

store the right to which [the FDIC] was entitled by the pledge agreement." *Id.*

This argument by the Government does not conform with the allegations of criminal behavior contained in the indictment. As discussed, the indictment alleges a fraud in which "the *value* of the 400,000 shares of Shared Technologies common stock reflected in certificate number 1315" was lost to the FDIC. Indictment, Counts 1–3, ¶ 14 (emphasis added). The indictment does not allege a fraud in which the FDIC was deprived of a "property right" in Shared Technologies stock. Because the "value" of certificate 1315 was never threatened, the Government's argument fails.

The Court is well-aware that the threshold for sustaining an indictment is quite low. That being said, the fact that the "scheme and artifice" to defraud that Autorino allegedly intended and devised is tied directly and particularly to "the value of the 400,000 shares of Shared Technologies common stock reflected in certificate number 1315," and because, as demonstrated above, the UCC protected the FDIC, Counts One, Two and Three of the indictment must be dismissed.

### C. *Count 4: Bank Fraud*

■■■ The crime of bank fraud is defined, in pertinent part, as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice . . . to obtain any of the moneys . . . securities, or other property . . . under the custody or control of . . . a financial institution, by means of false or fraudulent pretenses, representations, or promises . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. The "scheme and artifice" clause for the bank fraud charge in the indictment is incorporated and re-al-

leged from the wire fraud counts. *See* Indictment, Count 4, ¶ 14. For the same reasons that the wire fraud counts fail as a result of the indictment's "scheme and artifice" to defraud allegation, Count Four fails, as well.[7]

D. *Count 5: False Statement to the FDIC*

 The crime of false statement to the FDIC is defined as follows:

> Whoever, for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation, knowingly makes or invites reliance on a false, forged, or counterfeit statement, document, or thing shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1007. The conduct alleged in the indictment incorporates and re-alleges the "scheme and artifice" to defraud allegation from the wire fraud counts, as well as charges that, from about July 26, 1993 through and including about March 1998, Autorino invited reliance on certificate 1315 "which he then well knew to have been cancelled . . . ." Indictment, Count 5, ¶ 25. Because certificate 1315 could not have been, as a matter of law, cancelled or rendered valueless, Count 5 must be dismissed.

E. *Count 6: False Statement to the FDIC*

Count Six differs from Count Five in that it involves certificate 0959 rather than 1315. As alleged in the indictment and detailed above, the stories behind certificates 0959 and 1315 are almost identical except for a matter of timing. In short, whereas certificate 1315 was first pledged and delivered as collateral to the FDIC and then allegedly "cancelled" and

rendered "valueless," certificate 0959 was allegedly "cancelled" and rendered "valueless" prior to its being pledged and delivered as collateral to the FDIC.

Regardless of this distinction, Count Six involving Autorino's alleged false statement to the FDIC concerning certificate 0959 fails for much the same reason Count Five does. In particular, paragraph sixteen of Count Six reads:

> From about November 1995, through about July 17, 1996, in the District of Connecticut, the defendant ANTHONY D. AUTORINO, for the purpose of influencing the action of the FDIC, knowingly made and invited reliance on a false statement, document and thing, that being [Shared Technologies] stock certificate 0959, which he then well knew to have been cancelled and rendered valueless, which was not disclosed to the FDIC as receiver of New Bank of New England.

Indictment, Count Six, ¶ 16. Because certificate 0959 could not be, as a matter of law, "cancelled" or rendered "valueless," Count Six must be dismissed.

F. *Count 7: False Statement for Purposes of Influencing Action on a Loan*

 This final count of the indictment alleges, in part:

> On or about July 17, 1996, in the District of Connecticut, the defendant ANTHONY D. AUTORINO made a false statement and willfully over-valued a security for the purpose of influencing the action of the FDIC in deferring legal action regarding loans originally made to the defendant by Sentinel Bank and Bank of New England, by falsely purporting that Shared Technologies stock certificate

---

**7.** As with wire fraud, bank fraud does not require actual or potential loss to the bank. Rather, to fulfill the requirement that the bank at least bear a risk of loss, the evidence

need only establish that intent to expose the bank to loss. *See United States v. Laljie,* 184 F.3d 180 (2d Cir.1999). As written, however, the indictment fails to establish as much.

0959 remained valuable, when in fact, as he well knew, he previously had caused Shared Technologies stock certificate 0959 to be cancelled.

Indictment, Count Seven, ¶ 16. Because certificate 0959 could not be, as a matter of law, "cancelled," and because certificate 0959 did, in fact, "remain[ ] valuable," Count Seven must be dismissed.

### CONCLUSION

For the foregoing reasons, Autorino's motion to dismiss the indictment [Doc. No. 12] is GRANTED, and Counts One through Seven of the indictment are hereby DISMISSED.

SO ORDERED.